120 T.C. No. 8


UNITED STATES TAX COURT



HOWARD AND EVERLINA WASHINGTON, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent



Docket No. 11152-01L.            Filed March 6, 2003.



     <u>Held</u>:  The Court has jurisdiction to determine
whether the U.S. Bankruptcy Court discharged petition-
ers from their respective unpaid Federal income tax
(tax) liabilities for their taxable years 1994 and
1995.  <u>Held</u>, <u>further</u>,  The U.S. Bankruptcy Court did
not discharge petitioners from such liabilities.

     <u>Held</u>, <u>further</u>,  Respondent's application of peti-
tioners' overpayment for their taxable year 1997 as a
credit against their unpaid tax liability for their
taxable year 1990, and not 1998, was proper.  See sec.
6402(a), I.R.C.

     <u>Held</u>, <u>further</u>,  Respondent may proceed with the
collection action as determined in the notice of deter-
mination with respect to each of petitioners' taxable
years 1994, 1995, and 1998.

Howard Washington and Everlina Washington, pro sese.

Marie E. Small, for respondent.

CHIECHI, Judge:  The petition in this case was filed in response to a notice of determination concerning collection action(s) under section 6320 and/or 6330[1] (notice of determination).

### FINDINGS OF FACT

Most of the facts have been stipulated and are so found.

At the time petitioners filed the petition in this case, they resided in New York, New York.

On December 12, 1996, petitioners jointly filed late Form 1040, U.S. Individual Income Tax Return (Form 1040), for each of their taxable years 1994 (1994 return) and 1995 (1995 return).[2] In their 1994 return, petitioners reported that they owed $6,680 in tax.  In their 1995 return, petitioners reported that they owed $8,874 in tax.  When petitioners filed Forms 1040 for their taxable years 1994 and 1995, they did not pay the respective amounts of tax that they owed for those years.

---

[1]All section references are to the Internal Revenue Code in effect at all relevant times.  All Rule references are to the Tax Court Rules of Practice and Procedure.

[2]Petitioners' 1995 return was due on Apr. 15, 1996.  The record does not establish when petitioners' 1994 return was due. However, the maximum extension of time that respondent could have granted for the filing of petitioners' 1994 return was 6 months. Sec. 6081(a).

On February 3, 1997, respondent assessed petitioners' tax, as well as any penalties and interest as provided by law, for each of their taxable years 1994 and 1995.

In April 1998, petitioners jointly filed Form 1040 for their taxable year 1997 (1997 return). In their 1997 return, petitioners claimed a refund of $1,741 (petitioners' 1997 overpayment).

On April 15, 1998, when petitioners' 1997 return was due, petitioners' unpaid tax liability for 1990 (petitioners' unpaid 1990 liability) exceeded $1,741, the amount of petitioners' 1997 overpayment. On a date after April 15, 1998, and before June 8, 1998, that is not disclosed by the record, respondent applied petitioners' 1997 overpayment as a credit against petitioners' unpaid 1990 liability; i.e., respondent used that overpayment to offset part of that liability.[3]

On May 18, 1998,[4] petitioners filed a petition (bankruptcy

_____

[3]In a notice dated June 8, 1998 (June 8, 1998 notice) relating to petitioners' taxable year 1997, respondent informed petitioners that respondent had applied petitioners' 1997 overpayment to "OTHER FEDERAL TAXES" and that petitioners were not entitled to any refund for their taxable year 1997. Only the first page of the June 8, 1998 notice is part of the instant record. The portion of that notice which showed, inter alia, the "OTHER FEDERAL TAXES" to which respondent applied petitioners' 1997 overpayment is not part of the record in this case. However, the parties stipulated that respondent applied the 1997 overpayment as a credit against petitioners' unpaid 1990 liability.

[4]The parties stipulated that petitioners filed their bankruptcy petition on May 8, 1998. That stipulation is clearly contrary to the date of May 18, 1998, that the U.S. Bankruptcy
(continued...)

petition) in the U.S. Bankruptcy Court for the Southern District of New York, thereby commencing a bankruptcy proceeding under Chapter 7 of Title 11 of the United States Code. Attached to petitioners' bankruptcy petition was a document entitled "Schedule E - Creditors Holding Unsecured Priority Claims" (petitioners' bankruptcy Schedule E). Petitioners' bankruptcy Schedule E listed the Internal Revenue Service as a creditor with respect to a claim totaling $20,000 relating to petitioners' "TAXES FOR 1991, 1992, 1993, 1994, 1995, & 1996."[5]

On September 25, 1998, the U.S. Bankruptcy Court for the Southern District of New York entered a "DISCHARGE OF DEBTOR, ORDER OF FINAL DECREE" (September 25, 1998 discharge order). The September 25, 1998 discharge order provided in pertinent part:

IT IS ORDERED THAT:

1. The Debtor is released from all dischargeable debts.

2. Any judgment not obtained in this court is null and void as to the personal liability of the Debtor(s) regarding the following:

---

[4](...continued) Court for the Southern District of New York stamped on that petition, and we shall disregard that stipulation. See Cal-Maine Foods, Inc. v. Commissioner, 93 T.C. 181, 195 (1989). The record establishes, and we have found, that petitioners filed their bankruptcy petition on May 18, 1998.

[5]The only other creditor listed in petitioners' bankruptcy Schedule E was the New York State Department of Taxation and Finance with respect to a claim totaling $7,000 relating to petitioners' "TAXES FOR 1991, 1992, 1993, 1994, 1995 & 1996."

(a) debts dischargeable under 11 U.S.C. § 523(a);

(b) debts alleged to be excepted from discharge under 11 U.S.C. § 523(a)(2),(4),(6) or (15) unless determined by this court to be nondischargeable;

(c) debts determined by this court to be discharged.

On April 15, 1999, petitioners jointly filed Form 1040 for their taxable year 1998 (1998 return). In their 1998 return, petitioners (1) reported a total tax of $3,390.24, (2) reduced that amount by (a) $399.96, which represented tax previously withheld, and (b) $1,741, which represented petitioners' 1997 overpayment,[6] and (3) reported that they owed $1,249.28 in tax for their taxable year 1998. When petitioners filed Form 1040 for their taxable year 1998, they did not pay the amount of tax that they owed for that year.

On June 21, 1999, respondent assessed petitioners' tax, as well as any penalties and interest as provided by law, for their taxable year 1998.

On January 26, 2001, respondent filed a notice of Federal tax lien in New York County, New York, with respect to petitioners' taxable years 1994, 1995, and 1998. That notice showed in pertinent part:

---

[6]Respondent did not apply petitioners' 1997 overpayment as a credit against the total tax reported in petitioners' 1998 return. That is because, as we found above, respondent had previously applied that overpayment as a credit against petitioners' unpaid 1990 liability.

| Taxable Year | Unpaid Balance of Assessment |
|--------------|------------------------------|
| 1994 | $ 9,850.51 |
| 1995 | 11,938.14 |
| 1998 | 1,568.62 |

(We shall refer to the foregoing unpaid balance of assessment for each of petitioners' taxable years 1994, 1995, and 1998, as well as any accrued interest thereon not yet assessed, as petitioners' unpaid liability for each of those years.)

On January 31, 2001, respondent mailed to petitioners a notice informing them that respondent had filed a Federal tax lien with respect to petitioners' unpaid liability for each of their taxable years 1994, 1995, and 1998 and that they had a right to a hearing (Appeals Office hearing) with respect to that lien.

On February 8, 2001, petitioners filed Form 12153, Request for a Collection Due Process Hearing (Form 12153). In an attach-ment to Form 12153, petitioners stated in pertinent part:

> First, may we state for the record that your intent to enact a lien against any assets, jobs, or personal property or finances that we may have is a grave error. We insist that you cease from any impending actions to avert any embarrassment or possible legal consequences, which can thus be avoided. We trust that you will fax us a statement immediately of your intent to suspend action as outlined in your (collection appeals rights).

> Second, we are eager to finally put closure to this outstanding tax matter for the years indicated, and we trust that you will work fairly and cooperatively with us in reaching a mutual resolution. We feel our posi-tion of not owing the outstanding balance for which payment is being requested is based on the bankruptcy court decree under case number (98-43339) AJG, dated

<u>September 25, 1998.  (see attached copy)</u>.

The tax years 1994 and 1995 were part of this charge off through bankruptcy and were granted along with other years that have already been resolved.  The IRS was well informed of our intent to charge off the aforementioned years, and had ample time to question, refute, or object to our intent to charge off said years.  A period of 4 months passed without objection either in writing or in person prior to the final decree being rendered on 9/25/98 by the Honorable Judge Arthur J. Gonzalez.  Therefore, once the charge off was finalized, we were under the complete understanding that these tax years were no longer an issue and that the entire matter had been acceptably resolved.

On June 17, 1999, a hand written communiqué was sent to our attention by a customer service representative * * * instructing us to send you a copy of our dis- charge papers to the IRS * * *.  We were left with the understanding that once we complied with this request, the necessary adjustment to our accounts would be made and this matter would no longer be an issue.

Well, we complied with this request and to no avail; we are still dealing with this matter almost two years later.  So, let me make our position very clear, we do not wish to battle with you over what seems to be a major misunderstanding.  If in fact the amounts in question have been legally charged off for the years 1994 and 1995, then a letter of acknowledgement indi- cating that the charge is acceptable will satisfy our request for resolution.  If in fact you do not agree with the charge off and you wish to discuss this with us in person, we will comply with a prearranged visit in order to reach an amicable resolve that both sides can live with.  However, it must be understood upon receipt of this letter that all actions to implement a lien, garnishment of income, seizure of assets or any other punitive actions are immediately suspended with- out prejudice, and a notice acknowledging such will be forthcoming to abate any undue concern.

With regard to tax year 1998, this year was not part of the bankruptcy charge off, however, the amount in question arises from a deduction taken from a refund due us that was used to pay for taxes for one of the years that was charged off.  When we filed our taxes

for 1998, the refund due us from 1997 that was applied to a year charged off, was reclaimed as a deduction in 1998.  Evidently your account specialist did not agree with our accountant's reclaiming that refund, so arose the outstanding tax debt.  [Reproduced literally.]

On May 14, 2001, respondent held a telephonic Appeals Office hearing with petitioners.  On August 9, 2001, the Appeals Office mailed to petitioners a notice of determination regarding the Federal tax lien that respondent had filed with respect to petitioners' unpaid liability for each of their taxable years 1994, 1995, and 1998.  That notice stated in pertinent part:

Summary of Determination

You protested the filing of the Notice of Federal Tax Lien (NFTL) because you believed 1994 and 1995 tax years had been discharged in a bankruptcy proceeding. The 1998 tax liability is also in dispute.

You are incorrect in your assumption that 1994 and 1995 were discharged in bankruptcy.  They did not qualify as dischargeable debts and survived the bankruptcy.  The liability for 1998 arose from a disallowed deduction and is considered a valid liability.

    *      *      *      *      *      *      *

Relevant Issues Presented by the Taxpayer:

You believe the 1994 and 1995 liabilities were discharged under the bankruptcy proceeding docketed as 98-43339.  The bankruptcy petition was filed on 05/08/1998 and listed these and prior years.  The discharge was dated 09/28/1998.  Thus, the lien for these two years would be erroneous.

You further believe that a refund due to you for tax year 1997 was improperly applied to the liability for 1990, a year that was discharged.  When you filed your 1998 return you claimed the amount of the refund as a deduction.  This claim was disallowed and the liability arose.  It is your contention that the refund is due to

you and there should be no liability for 1998 and therefore, no reason to file the lien.

<u>Balancing Efficient Collection and Intrusiveness:</u>

It is necessary to balance the need to efficiently collect the outstanding liability against the taxpayers' legitimate concerns that collection activity is not overly intrusive.

In this case, you are mistaken in your belief that the 1994 and 1995 liabilities were discharged. Under bankruptcy law 11 USC Sec. 523(a)(1)(B)(ii), the debt in respect to a tax is not discharged if the return was filed after two years before the date of the filing of the petition. The returns for 1994 and 1995 were filed 02/03/1997. To be dischargeable they had to be filed no later than 05/08/1996. Therefore, by statute, they were not dischargeable.

The refund you expected for 1997 became part of the bankruptcy estate when you filed the petition for Chapter 7. This is a liquidation of assets and provides the mechanism for taking control of the property of the debtor. You no longer had an interest in the property of the bankruptcy estate therefore you lack standing to challenge the treatment of the refund. <u>See In re Gucci, 126 F.3d 380, 388 (2d Cir. 1997)</u>. The disallowance of the deduction of the amount of the refund was the correct action and the liability created by the disallowance is due and owing.

All legal and procedural guidelines were met prior to the filing of the NFTL. The years in question are based on valid assessments. The lien is considered to be the least intrusive method of protecting the Government's interest in the collection of the debt.

The determination * * * to file the lien is sustained.

OPINION

In support of their position that respondent may not proceed with collection with respect to their taxable years 1994 and 1995, petitioners contend that the U.S. Bankruptcy Court for the

Southern District of New York discharged them from their respective unpaid liabilities for such years.  Respondent does not dispute that if we find that that court discharged petitioners from such unpaid liabilities, respondent may not proceed with the collection action as determined in the notice of determination with respect to petitioners' taxable years 1994 and 1995. However, respondent disagrees with petitioners' contention that the U.S. Bankruptcy Court for the Southern District of New York discharged petitioners from their respective unpaid liabilities for those years.  We must first determine whether we have jurisdiction to resolve the parties' dispute over whether that court discharged petitioners from such unpaid liabilities.[7]  It is the position of the parties that the Court has that jurisdiction.

Where the Court has jurisdiction over the underlying tax liability, the Court has jurisdiction to review a determination by the Appeals Office to proceed by lien with respect to any such

---

[7]Shortly after having received the parties' respective trial memoranda in this case, the Court advised the parties during a telephonic conference, inter alia, that an issue exists as to whether the Court has jurisdiction to resolve the dispute that they discussed in such memoranda over whether the U.S. Bankruptcy Court for the Southern District of New York discharged petitioners from their respective unpaid liabilities for their taxable years 1994 and 1995.  At the beginning of the trial in this case, the Court reminded the parties about that jurisdictional issue. After that trial, the Court directed the parties to address in the posttrial briefs the jurisdictional issue that the Court had raised.

unpaid liability.  See sec. 6330(d)(1).[8]  In the instant case, the Appeals Office determined in the notice of determination, inter alia, that the U.S. Bankruptcy Court for the Southern District of New York did not discharge petitioners from their respective unpaid liabilities for their taxable years 1994 and 1995 and that respondent may proceed by lien with respect to such liabilities.

We have held in deficiency proceedings commenced in the Court under section 6213 that we do not have jurisdiction to determine whether a U.S. Bankruptcy Court has discharged a taxpayer from an unpaid tax liability in a bankruptcy proceeding instituted by such taxpayer.  Neilson v. Commissioner, 94 T.C. 1, 9 (1990); Graham v. Commissioner, 75 T.C. 389, 399 (1980).  In so holding, we relied on Swanson v. Commissioner, 65 T.C. 1180, 1184 (1976), in which we observed that an action brought for redetermination of a deficiency "has nothing to do with collection of the tax nor any similarity to an action for collection of a debt".

In contrast to a deficiency proceeding, a lien proceeding commenced in the Court under section 6330(d)(1), such as the instant lien proceeding, is closely related to and has everything

---

[8]The instant case deals with a lien, which is subject to sec. 6320.  Sec. 6320(c) provides that "subsections (c), (d) (other than paragraph (2)(B) thereof), and (e) of section 6330 [relating to proposed levies] shall apply."

to do with collection of a taxpayer's unpaid liability for a taxable year. We must determine in the instant lien proceeding whether respondent may proceed with the collection action as determined in the notice of determination with respect to, inter alia, petitioners' taxable years 1994 and 1995. Whether the U.S. Bankruptcy Court for the Southern District of New York discharged petitioners from their respective unpaid liabilities for those years is an issue that has a direct bearing on whether respondent may proceed with the lien at issue.[9] We hold that in the instant lien proceeding commenced under section 6330(d)(1) the Court has jurisdiction to determine whether the U.S. Bankruptcy Court for the Southern District of New York discharged petitioners from such unpaid liabilities.

Having held that we have jurisdiction to resolve the dispute between the parties over whether the U.S. Bankruptcy Court for the Southern District of New York discharged petitioners from their respective unpaid liabilities for their taxable years 1994 and 1995, we now address that dispute.

_____

[9]Sec. 6330(c)(2) allowed petitioners to raise at their Appeals Office hearing any relevant issue with respect to their respective unpaid liabilities for their taxable years 1994, 1995, and 1998, including "(ii) challenges to the appropriateness of collection actions". Sec. 6330(c)(2)(A). Respondent does not dispute that petitioners' claim at their Appeals Office hearing that the U.S. Bankruptcy Court for the Southern District of New York discharged them from their respective unpaid liabilities for their taxable years 1994 and 1995, which are the subject of a lien, raised a relevant issue that challenges the appropriateness of such lien.

An individual debtor is not to be discharged in a bankruptcy proceeding from certain specified categories of debts. 11 U.S.C. sec. 523(a) (2000). The first such category is described in pertinent part in 11 U.S.C. sec. 523(a)(1) as follows:

§ 523. Exceptions to discharge

    (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title [title 11] does not discharge an individual debtor from any debt--

        (1) for a tax or a customs duty-

            (A) of the kind and for the periods specified in section 507(a)(2) or 507(a)(8) of this title, whether or not a claim for such tax was filed or allowed;

            (B) with respect to which a return, if required-

                (i) was not filed; or

                (ii) was filed after the date on which such return was last due, under applicable law or under any extension, and after two years before the date of the filing of the petition; * * *

Petitioners argue that their respective unpaid liabilities for their taxable years 1994 and 1995 do not fit within the exception to discharge set forth in 11 U.S.C. sec. 523(a)(1)(B)(ii). According to petitioners,

    only if the taxes were filed after 2 years before the date of filing of the petition would the years in question be non dischargeable [sic]. The tax years in question were filed 17 months before the date of the petition and not after 2 years before the date of the petition.

The above-quoted argument of petitioners misconstrues and

misapplies 11 U.S.C. sec. 523(a)(1)(B)(ii). An individual debtor is not discharged in a bankruptcy proceeding from a debt for tax with respect to which a return is filed after the date on which such return was last due and after 2 years before the date of the filing of the bankruptcy petition. 11 U.S.C. sec. 523(a)(1)(B)(ii). In other words, an individual debtor is not discharged in a bankruptcy proceeding from a debt for tax with respect to which a return is filed late and within the 2-year period immediately preceding the filing of the bankruptcy petition. E.g., Young v. United States, 535 U.S. 43, 48-49 (2002).

The September 25, 1998 discharge order of the U.S. Bankruptcy Court for the Southern District of New York provided in pertinent part that petitioners were "released from all dischargeable debts." In the instant case, petitioners' 1994 return and petitioners' 1995 return both were filed late on December 12, 1996. Petitioners filed their bankruptcy petition on May 18, 1998. On the record before us, we find that petitioners filed their 1994 return and their 1995 return after the respective dates on which such returns were last due and after 2 years before the date on which they filed their bankruptcy petition. See 11 U.S.C. sec. 523(a)(1)(B)(ii); see also Young v. United States, supra. We further find on that record that pursuant to 11 U.S.C. sec. 523(a)(1)(B)(ii) the U.S. Bankruptcy Court for the Southern District of New York did not discharge

petitioners from their respective unpaid liabilities for their taxable years 1994 and 1995.

We now consider petitioners' unpaid liability for 1998. It is petitioners' position that respondent should have applied petitioners' 1997 overpayment to offset part of their unpaid liability for 1998, and not their unpaid liability for 1990. Respondent argues that pursuant to section 6402(a) respondent's application of petitioners' 1997 overpayment as a credit against petitioners' unpaid 1990 liability was proper. Petitioners do not address that argument.[10]

Section 6402(a) provides in pertinent part:

---

[10]Instead, for the first time on brief, petitioners contend that respondent violated the automatic stay imposed by 11 U.S.C. sec. 362(a) (2000) when respondent applied petitioners' 1997 overpayment as a credit against their unpaid 1990 liability. We shall not consider that contention. The record does not establish that petitioners raised that contention at their Appeals Office hearing, see Magana v. Commissioner, 118 T.C. 488, 493-494 (2002); Miller v. Commissioner, 115 T.C. 582, 589 n.2 (2000); see also sec. 301.6320-1(f)(2), Q&A-F5, Proced. & Admin. Regs., or at trial, see Elrod v. Commissioner, 87 T.C. 1046, 1070 (1986); Robertson v. Commissioner, 55 T.C. 862, 865 (1971). In any event, we note that, as pertinent here, the automatic stay imposed by 11 U.S.C. sec. 362(a) was effective on May 18, 1998, the date on which petitioners filed their bankruptcy petition in the U.S. Bankruptcy Court for the Southern District of New York. See 11 U.S.C. sec. 362(a). In April 1998, petitioners filed their 1997 return which showed petitioners' 1997 overpayment. The notice informing petitioners that respondent had applied petitioners' 1997 overpayment as a credit against another tax liability of petitioners was dated June 8, 1998. We find that the record does not establish that respondent applied petitioners' 1997 overpayment as a credit against petitioners' unpaid 1990 liability on or after May 18, 1998, the date on which petitioners filed their bankruptcy petition.

> In the case of any overpayment, the Secretary
> * * * may credit the amount of such overpayment * * *
> against any liability in respect of an internal revenue
> tax on the part of the person who made the overpayment
> * * *.

When petitioners filed their 1997 return in April 1998, they had an unpaid liability with respect to their taxable year 1990 that exceeded the amount of petitioners' 1997 overpayment shown in that return. We hold that section 6402(a) authorized respondent to credit petitioners' 1997 overpayment against their unpaid 1990 liability.

We now address what we understand to be petitioners' position that the Court should review respondent's failure to abate any penalties and interest under section 6404 with respect to their taxable years 1994, 1995, and 1998 and should abate any such penalties and interest. We turn first to petitioners' position regarding respondent's failure to abate interest under section 6404. The record does not establish that petitioners raised at their Appeals Office hearing respondent's failure to abate interest under section 6404.[11] Consequently, we shall not consider that matter.[12] See Magana v. Commissioner, 118 T.C.

---

[11]In support of their contention that they raised at their Appeals Office hearing respondent's failure to abate interest under sec. 6404, petitioners rely on a document that they attached to their answering brief and that is not part of the instant record. The Court has disregarded that document. See Rule 143(b).

[12]Assuming arguendo (1) that the record before us had estab-
(continued...)

488, 493-494 (2002); <u>Miller v. Commissioner</u>, 115 T.C. 582, 589 n.2 (2000); see also sec. 301.6320-1(f)(2), Q&A-F5, Proced. & Admin. Regs.

We turn next to petitioners' position regarding respondent's failure to abate penalties under section 6404.[13]  The record does not establish that petitioners raised at their Appeals Office hearing respondent's failure to abate penalties under section

_____

[12](...continued)
lished that petitioners raised at their Appeals Office hearing respondent's failure to abate interest under sec. 6404 with respect to their taxable years 1994, 1995, and 1998 and (2) that we concluded that we have jurisdiction under sec. 6404 to consider petitioners' request that we review such failure, see <u>Katz v. Commissioner</u>, 115 T.C. 329, 340-341 (2000), on the instant record, we find that petitioners have not shown that respondent abused respondent's discretion in failing to abate interest under sec. 6404 for any of their taxable years 1994, 1995, and 1998. See sec. 6404(h).  In fact, we find on that record that petitioners have failed to establish any error or delay attributable to an officer or employee of respondent being erroneous or dilatory in performing (1) a ministerial act within the meaning of sec. 6404(e) requiring an abatement of interest with respect to their taxable years 1994 and 1995 and (2) a ministerial or managerial act within the meaning of sec. 6404(e) requiring an abatement of interest with respect to their taxable year 1998.  See <u>Katz v. Commissioner</u>, <u>supra</u> at 341.  In this connection, at trial petitioner Howard Washington (Mr. Washington) testified about several alleged acts of certain employees of the Internal Revenue Service, which petitioners contend require abatement of interest under sec. 6404.  We find that none of the alleged acts about which Mr. Washington testified qualifies as a ministerial act or a managerial act within the meaning of sec. 6404(e).  See sec. 301.6404-2(b)(1) and (2), Proced. & Admin. Regs.

[13]The record does not disclose the nature of the penalties for which respondent contends petitioners are liable.

6404.[14]  Consequently, we shall not consider that matter.[15]  See

<u>Magana v. Commissioner</u>, <u>supra</u>; <u>Miller v. Commissioner</u>, <u>supra</u>; see

also sec. 301.6320-1(f)(2), Q&A-F5, Proced. & Admin. Regs.

Based upon our examination of the entire record before us,

we find that respondent may proceed with the collection action as

determined in the notice of determination with respect to each of

petitioners' taxable years 1994, 1995, and 1998.

We have considered all of petitioners' arguments and conten-

tions that are not discussed herein, and we find them to be

without merit and/or irrelevant.

To reflect the foregoing,

<u>Decision will be entered for</u>

<u>respondent</u>.

Reviewed by the Court.

COHEN, SWIFT, COLVIN, BEGHE, FOLEY, THORNTON, and MARVEL,
<u>JJ.</u>, agree with this majority opinion.

---

[14]In support of their contention that they raised at their
Appeals Office hearing respondent's failure to abate penalties
under sec. 6404, petitioners rely on a document that they at-
tached to their answering brief and that is not part of the
instant record.  The Court has disregarded that document.  See
Rule 143(b).

[15]Assuming arguendo that the record before us had estab-
lished that petitioners raised at their Appeals Office hearing
respondent's failure to abate any penalties under sec. 6404 with
respect to their taxable years 1994, 1995, and 1998, we hold that
the Court does not have jurisdiction to review petitioners'
request that we review any such failure.  See sec. 6404(h); see
also <u>Woodral v. Commissioner</u>, 112 T.C. 19, 21 n.4 (1999).

WELLS, C.J., concurring:  I respectfully concur in this Court's decision to exercise jurisdiction in the instant case to decide whether a tax liability has been discharged in bankruptcy. I write to note, however, that our opinion does not necessarily preclude taxpayers from seeking review in an appropriate Bankruptcy Court after they have petitioned this Court.  Although the issue to be decided in the instant case is relatively straightforward, it is possible that taxpayers will present this Court with more difficult questions that may be better suited for consideration by a Bankruptcy Court.  Under such circumstances, this Court may defer to a Bankruptcy Court to decide the matter. Such deference would not be premised upon any concerns that we lack jurisdictional capacity to consider the issue.  Rather, it would be based upon considerations of comity and judicial efficiency, combined with our recognition that this Court does not deal with bankruptcy matters with the expertise that a Bankruptcy Court possesses.  See Kluger v. Commissioner, 83 T.C. 309, 320 (1984).

GERBER, BEGHE, and FOLEY, JJ., agree with this concurring opinion.

HALPERN, J., concurring:

I. Introduction

I concur with the conclusion of the majority that respondent may proceed with the collection action as determined in the notice of determination with respect to each of petitioner's taxable years 1994, 1995, and 1998. I write separately principally to add some observations concerning what we have characterized as the "standard of review" (described infra) applicable to our jurisdiction under section 6330(d)(1) to review a section 6330 determination.

II. Section 6330

Section 6330 entitles a taxpayer to notice and an opportunity for a hearing before certain lien and levy actions are taken by the Commissioner in furtherance of the collection from the taxpayer of unpaid Federal taxes. At such required hearing (the section 6330 hearing), the Appeals officer conducting the hearing must verify that the requirements of any applicable law or administrative procedure have been met. Sec. 6330(c)(1). The taxpayer requesting the section 6330 hearing may raise "any relevant issue relating to the unpaid tax or the proposed levy". Sec. 6330(c)(2)(A). The taxpayer may also raise challenges to the existence or amount of the underlying tax liability "if the person did not receive any statutory notice of deficiency for such tax liability or did not otherwise have an opportunity to

dispute such tax liability." Sec. 6330(c)(2)(B). Following the section 6330 hearing, the Appeals officer must determine whether the collection action is to proceed, taking into account the verification the Appeals officer has made, the issues raised by the person requesting the hearing, and "whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the person that any collection action be no more intrusive than necessary." Sec. 6330(c)(3). We have jurisdiction to review such determinations where we have jurisdiction of the underlying tax liability. Sec. 6330(d)(1)(A).

III. The Nature of the Hearing Before Us

In Sego v. Commissioner, 114 T.C. 604, 610 (2000), we discussed the standard of review that a court is to apply in reviewing a section 6330 determination. After reviewing a portion of the legislative history relevant to the enactment of section 6330, we stated:

> [W]here the validity of the underlying tax liability is properly at issue, the Court will review the matter on a de novo basis. However, where the validity of the underlying tax liability is not properly at issue, the Court will review the Commissioner's administrative determination for abuse of discretion.

See also Goza v. Commissioner, 114 T.C. 176, 181-183 (2000) (the same). Perhaps a more instructive way to describe the process involved when we review a section 6330 determination would be to

distinguish between situations in which the taxpayer must rely on the record made before the Appeals officer and situations in which he is entitled to make a new record.  In reviewing administrative determinations, a court ordinarily is limited to consideration of the decision of the agency involved and of the evidence on which it was based.  United States v. Bianchi & Co., 373 U.S. 709, 714-715 (1963).  Nevertheless, we have concluded that, in section 6330, Congress intended an exception to that general rule in situations where the existence or amount of the underlying tax liability was properly before the Appeals officer under section 6330(c)(2)(B) and the Appeals officer's determination in that respect is presented to a court for review.  In such situations, the court must accord the taxpayer a hearing de novo on the existence or amount of the underlying tax liability.  The taxpayer may make a new record, and he is not restricted to arguing from the record made before the Appeals officer.

IV.  Determining the Applicability of Section 6330(c)(2)(B)

In order to determine which matters are properly raised by a taxpayer under section 6330(c)(2)(B) (i.e., those matters with respect to which the reviewing court must accord the taxpayer a hearing de novo), it is necessary to review some basic provisions of Chapters 63 (Assessment) and 64 (Collection) of the Internal Revenue Code.  Section 6201(a) provides that the Secretary "is authorized and required to make * * * assessments of all taxes

* * * imposed by this title".  Such authority extends to "all taxes determined by the taxpayer or by the Secretary" for which a return is required.  Sec. 6201(a)(1).  A preliminary step is required, however, in the case of income, estate, gift, and certain excise taxes.  With respect to those types of taxes, if the tax imposed exceeds the amount shown (if any) as the tax by the taxpayer on the required return, the Commissioner (acting for the Secretary) generally may not assess such deficiency without first issuing a notice of deficiency to the taxpayer and allowing the taxpayer to petition this Court for a redetermination of such deficiency.  Secs. 6201(e), 6211(a), 6212, 6213(a), 6214(a), and 6215(a).  On the collection side, section 6303(a) provides generally that the Secretary "shall * * * after the making of an assessment of a tax * * * give notice to each person liable for the unpaid tax, stating the amount and demanding payment thereof."

When section 6330(c)(2) is read against the backdrop of the statutory provisions discussed in the preceding paragraph, it becomes apparent that the term "underlying tax liability", as used in section 6330(c)(2)(B), means the tax (which may or may not be the correct tax) on which the Commissioner based his assessment (whether such tax is the tax shown on the taxpayer's return or the tax determined as a result of an examination by the Commissioner), whereas the term "unpaid tax", as used in section

6330(c)(2)(A), refers to the unpaid portion of the assessed tax (a fixed amount) that is the subject of the notice of lien or proposed levy that is part of the Commissioner's collection function. That interpretation is consistent with the proviso in section 6330(c)(2)(B) that a petitioner may challenge "the existence or amount of the underlying tax liability" only if the taxpayer "did not receive any statutory notice of deficiency for such tax liability or did not otherwise have an opportunity to dispute such tax liability." That is, a taxpayer may dispute the determination of the tax that formed the basis of the Commissioner's assessment only if he did not have such an opportunity prior to assessment.

To summarize, the only issues that a taxpayer may properly raise under section 6330(c)(2)(B), and therefore the only issues with respect to which the reviewing court must accord the taxpayer a hearing de novo, are issues relating to a redetermination of the tax on which the Commissioner based his assessment, provided that the petitioner did not have an opportunity to seek such a redetermination prior to assessment. All other challenges to the proposed collection action are properly raised under section 6330(c)(2)(A), and a taxpayer seeking judicial review of the Appeals officer's disposition of any such challenge is restricted to arguing from the record made before the Appeals officer.

## V.  The Discharge in Bankruptcy Issue

Petitioners' claim that the U.S. Bankruptcy Court for the Southern District of New York (the Bankruptcy Court) discharged them from their respective unpaid liabilities for 1994 and 1995 is not a challenge to the preassessment determination of the tax but, rather, is in the nature of an affirmative defense that petitioners could raise in any postassessment action to collect the unpaid portion of the assessed tax from them.  See, e.g., First Natl. Bank v. Haymes, 268 N.Y.S.2d 820, 827 (City Civ. Ct. 1996), stating:  "[W]here the bankrupt is sued upon a debt[,] a discharge in bankruptcy is a defense which must be affirmatively pleaded by him."  Such a defense is relevant to collection of the unpaid portion of the assessed tax and, thus, is appropriately raised under section 6330(c)(2)(A) (but not under section 6330(c)(2)(B)).

## VI.  Standard of Review

Where, upon appeal from a section 6330 determination, a challenge to the existence or amount of the taxpayer's underlying tax liability (i.e., a challenge to the determination of the tax on which the Commissioner based his assessment) is properly before us, the taxpayer is entitled to a hearing de novo and may make a record, and we should decide that challenge in the same manner as we would redetermine a deficiency pursuant to section 6214.  In most other instances where we are asked to review a

section 6330 determination, the taxpayer will be asking us to review some exercise of discretion by the Appeals officer, such as his determination that the proposed collection action balances the need for efficient collection against the intrusiveness of the collection action.  Such a review of discretionary action necessarily involves a question of what was before the Appeals officer, and we determine whether the Appeals officer abused his discretion by considering the record before him.  The standard of review in such instances may, thus, be characterized as an "abuse of discretion" standard.  Of course, we may be asked to review whether the Appeals officer correctly applied the law, e.g., whether he correctly interpreted some provision of section 6015, which provides relief from joint and several liability on joint returns.  Whether characterized as a review for abuse of discretion or as a consideration "de novo" (of a question of law), we must reject erroneous views of the law.  See <u>Cooter & Gell v. Hartmarx Corp.</u>, 496 U.S. 384, 405 (1990).[1]  Finally, if we are asked to review whether the Appeals officer satisfied his obligation under section 6330(c)(1) to obtain verification that all legal and administrative requirements have been met, we are not

---

[1]  As put by the Court of Appeals for the Second Circuit in the context of reviewing a discretionary action taken by the District Court for the Southern District of New York:  "It is not inconsistent with the discretion standard for an appellate court to decline to honor a purported exercise of discretion which was infected by an error of law."  <u>Abrams v. Interco, Inc.</u>, 719 F.2d 23, 28 (2d Cir. 1983).

presented with a matter of discretion.  At the two extremes, we are presented either with a purely factual question (whether the Appeals officer did it) or a purely legal question (whether his actions were legally sufficient).

VII.  Conclusion

In the case before us, the Appeals officer had before him the Bankruptcy Court's discharge order (the discharge order), which, in pertinent part, provided that "the Debtor is released from all dischargeable debts."  The Appeals officer examined the pertinent provisions of the bankruptcy law (in particular, 11 U.S.C. sec. 523(a)(1)(2000)) and determined that petitioners' 1994 and 1995 Federal income tax liabilities had not been discharged.  The Appeals officer did not abuse his discretion in determining that the discharge order did not discharge petitioners' 1994 and 1995 tax liabilities.

GERBER, BEGHE, and GALE, JJ., agree with this concurring opinion.

BEGHE, J., concurring:  I write separately to address concerns expressed by Judge Vasquez and other concerns, and to attempt to provide explanations of matters left to implication by the majority opinion.

On the initial question of the Court's jurisdiction to address the bankruptcy discharge issue, I would flesh out the majority opinion's conclusion that the Tax Court has jurisdiction to address the issue under its statutory mandate, to observe that the Bankruptcy Act, 28 U.S.C. section 1334(a) and (b) (2000), does not deprive the Tax Court of jurisdiction.[1]  Although subsection (a) provides that "the district courts shall have original and exclusive jurisdiction of all cases under title 11", the case at hand appears to be a situation described in subsection (b) "arising under title 11, or arising in or related to cases under title 11" in which the district courts have original but not exclusive jurisdiction.  The corollary proposition is that the case at hand is one in which other courts, including the Tax

---

[1]28 U.S.C. sec. 1334(a) and (b) provides as follows:

(a)  Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.

(b)  Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

Court, have concurrent jurisdiction with the district courts to decide various bankruptcy discharge issues.[2]

The second paragraph of Judge Vasquez's concurring opinion indicates some uncertainty about what aspect of respondent's determination with respect to 1994 and 1995 we are reviewing. The Court is reviewing (1) respondent's ultimate determination that "The determination * * * to file the lien is sustained" and (2) the determination in support of that ultimate determination that the Bankruptcy Court did not discharge petitioners from their unpaid tax liabilities for the taxable years 1994 and 1995.

Judge Vasquez states in his third paragraph that a challenge to the appropriateness of collection action under section 6330(c)(2)(A)(ii) appears to him to be more about the type and/or method of collection chosen by the IRS rather than being about whether petitioners' taxes were discharged in bankruptcy. In my view, a question about the appropriateness of the collection action includes whether it is proper for the IRS to proceed with the collection action as determined in the notice of determination. I would conclude, and the parties agree, that if the Bankruptcy Court discharged petitioners from their unpaid tax liabilities for 1994 and 1995, any collection action for those

---

[2]See text _infra_ at notes 3 and 4 and authorities cited for the proposition that other courts have concurrent jurisdiction with the district courts sitting in bankruptcy (and bankruptcy courts under 28 U.S.C. sec. 157(a)) over all but certain specified bankruptcy discharge issues.

years would be inappropriate, and therefore respondent could not proceed. In any event, a challenge to the appropriateness of collection action under section 6330(c)(2)(A)(ii) is illustrative of the type of "any relevant issue relating to the unpaid tax" the taxpayer may raise under section 6330(c)(2)(A).

Judge Vasquez goes on to state in his fourth paragraph that "Whether petitioners' taxes have been discharged in bankruptcy appears to be a challenge to the existence or amount of their underlying tax liability under section 6330(c)(2)(B)."

Preliminarily, I note that whether there is an issue under section 6330(c)(2)(B) is not crucial to resolving (1) whether we have jurisdiction to decide whether petitioners were discharged from their unpaid tax liabilities for 1994 and 1995 and (2) if we do have such jurisdiction, whether they were so discharged. Whether there is an issue under section 6330(c)(2)(B) is relevant only for the purpose of determining whether we are deciding this case under a de novo standard of review or an abuse-of-discretion standard of review.

This leads to Judge Vasquez's comments regarding the standard of review. Judge Vasquez indicates that, assuming we have jurisdiction, it is unclear what standard of review to apply in resolving the bankruptcy discharge issue. Although, the majority opinion does not explicitly state what that standard is, the opinion clearly and properly applies a de novo standard and holds

that the Bankruptcy Court did not discharge petitioners from their unpaid tax liabilities for 1994 and 1995. A fortiori, respondent did not abuse respondent's discretion in determining to sustain the lien with respect to 1994 and 1995 on the ground that the Bankruptcy Court did not discharge petitioners from those liabilities. Regardless of the standard of review, petitioners have not satisfied that standard. In other words, resolution of the bankruptcy discharge issue does not depend on the standard of review. I therefore see no harm in the majority opinion's not explicitly stating the standard of review.

I now return to Judge Vasquez's statement that "Whether petitioners' taxes have been discharged in bankruptcy appears to be a challenge to the existence or amount of their underlying tax liability under section 6330(c)(2)(B)." While that is not an unreasonable position, I believe the better view is that the bankruptcy discharge issue in the case at hand does not relate to the existence or amount of the underlying tax liability. That is because the so-called discharge in bankruptcy does not discharge a tax debt; it discharges the individual debtor from the tax debt. As pertinent here, 11 U.S.C. section 523(a)(1)(B) provides that a discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of title 11 does not "discharge an individual debtor from any debt" for a tax with respect to which a return was filed late and within the two-year period immediately preceding the date of

the filing of the bankruptcy petition.  In my view, a discharge in bankruptcy of a tax debt does not vitiate the existence or the amount of that debt.  Rather, the discharge discharges the individual debtor from paying the tax debt that exists.

The question might be asked, if the Bankruptcy Court should have expressly determined that a taxpayer was discharged from a tax debt, whether we would be at liberty to reach a different result, and vice versa.  Judge Vasquez answered that question for the Court in Katz v. Commissioner, 115 T.C. 329, 340 (2000).  In Katz, the Court held, because the Bankruptcy Court had considered and rejected the taxpayer's claim that he was discharged from a tax liability for the year in question, we would not address that question.  That was the correct result under the rule of res judicata or claim preclusion.  Similarly, if the Tax Court were to hold that a taxpayer was or was not discharged from a particular tax debt, the Bankruptcy Court would be bound by our holding. See Erspan v. Badgett, 647 F.2d 550, 556 (5th Cir. 1981).  In this connection, Rule 4007(a) of the Federal Rules of Bankruptcy Procedure provides that either a debtor or a creditor may file a complaint in the Bankruptcy Court to obtain a determination whether a debtor was discharged from a particular debt.  However, the Bankruptcy Court's jurisdiction to resolve the dischargeability issue involving most debts, including tax

debts, is not exclusive,[3] but is concurrent with other courts.[4]

There may be concern whether, as a matter of comity and discretion, we should refrain from deciding the discharge issue and instead remit petitioners to the Bankruptcy Court, which has expertise and authority to construe and apply its own order of discharge.  Of course, this Court has decided myriad cases in which, in order to resolve the tax issues, we decided issues of law, both Federal and State, outside our primary expertise.  We have not hesitated to do so before, and we properly do so in the case at hand.

It should be noted that if we declined to resolve the bankruptcy dischargeability issue, we could not <u>force</u> petitioners to return to the Bankruptcy Court to have that court resolve that question.  What would we do if petitioners should refuse to go to the Bankruptcy Court and insist that we decide the bankruptcy

---

[3]Bankruptcy Courts have exclusive jurisdiction only with respect to debts enumerated in 11 U.S.C. sec. 523(a)(2), (4), (6), and (15).  See 11 U.S.C. sec. 523(c).

[4]See, e.g., <u>In re Zitzman</u>, 46 F. Supp. 314, 315 (E.D.N.Y. 1942); <u>In re Crawford</u>, 183 Bankr. 103, 105 (Bankr. W.D. Va. 1995); <u>In re Galbreath</u>, 83 Bankr. 549, 551 (Bankr. S.D. Ill. 1988); Fed. R. Bankr. Proced. 4007 Advisory Committee's Note (1983) ("Jurisdiction over this issue on these debts is held concurrently by the Bankruptcy Court and any appropriate nonbankruptcy forum."); 4 Collier on Bankruptcy, par. 523.03, at 523-17 (15th ed. rev. 1996).  Jurisdiction to determine bankruptcy dischargeability issues may be exercised by the Bankruptcy Court as well as other courts with respect to all debts enumerated in 11 U.S.C. sec. 523(a), including 11 U.S.C. sec. 523(a)(1) relating to tax debts, except 11 U.S.C. sec. 523(a)(2), (4), (6), and (15).

dischargeability issue? We would have an obligation and a responsibility to enter a decision sustaining or rejecting in whole or in part the collection action set forth in the notice of determination. We would not be fulfilling that obligation and that responsibility if we were to request the taxpayer to ask the Bankruptcy Court to resolve a question over which we have concurrent jurisdiction.

Our request to that effect would be inconsistent with the goals of judicial and party economy embodied in the slogan "one-stop shopping". If we have jurisdiction to resolve the bankruptcy dischargeability issue, we should not ask the taxpayer who raises that issue at an Appeals Office hearing and in this Court to go to another court to resolve that issue and then return to this Court so we can decide, at the end of what will by then have become a very long figurative day, whether respondent may proceed with the collection action as determined in the notice of determination.

Even if the taxpayer were willing to go back to the Bankruptcy Court, it would be a waste of time and money to try to force or allow them to do so. The money would consist not only of additional legal fees but also of additional interest accruing while the liability remains unpaid. And if the taxpayers are willing, for purposes of delay, to take these extra steps and to incur the additional costs, the IRS should not be impeded further

in the collection of tax debts that are due and owing if they have not been discharged in bankruptcy.

Having decided we have jurisdiction, there is only one question we must address in the lien proceeding at hand in order to decide whether to sustain or reject in whole or in part the collection action in respondent's notice of determination. That one question is whether petitioners were discharged under 11 U.S.C. section 523(a)(1)(B)(ii) from their unpaid tax liabilities for the taxable years 1994 and 1995. This Court, not the Bankruptcy Court, should resolve that question in the lien proceeding at hand, and the Court has properly done so.

A final note: The bankruptcy discharge issue in the case at hand is a slam dunk for respondent. Petitioners' argument on the merits of this issue borders on being frivolous. The majority opinion properly shows no hesitation in deciding the issue. Nothing the Court does today will prevent us from revisiting, in subsequent collection cases in which other bankruptcy discharge issues are raised, whether, as a matter of comity and discretion, we should defer to the Bankruptcy Court's expertise and authority to construe and apply its own order of discharge.

GERBER, J., agrees with this concurring opinion.

VASQUEZ, J., concurring:  I concur with the majority that we have jurisdiction to review respondent's determination in this case.  I write separately, however, because the majority opinion fails to address what standard of review we should apply.

Section 6330(c)(3) provides that the Commissioner's determination shall take into consideration:  The verification presented under section 6330(c)(1), the issues raised under section 6330(c)(2), and whether the proposed collection action balances the need for efficient collection with the collection action's being no more intrusive than necessary.  Section 6330(c)(2) provides that at the section 6330 hearing a taxpayer may raise any relevant issue relating to the unpaid tax or proposed levy including appropriate spousal defenses, challenges to the appropriateness of the collection actions, and offers of collection alternatives.  Sec. 6330(c)(2)(A).  In appropriate circumstances, a taxpayer may also raise challenges to the existence or amount of the underlying tax liability.  Sec. 6330(c)(2)(B).

Although the majority interprets petitioners' bankruptcy discharge argument as a challenge to the appropriateness of collection action under section 6330(c)(2)(A)(ii), majority op. p. 12 note 9, it is unclear to me how a challenge to the appropriateness of the collection action includes whether the bankruptcy court discharged the tax liability.  A challenge to the appropriateness of the collection action appears to me to be more

about the type and/or method of collection action chosen by the IRS.

Whether petitioners' taxes have been discharged in bankruptcy appears to be a challenge to the existence or amount of their underlying tax liability under section 6330(c)(2)(B). By claiming that the bankruptcy court discharged their tax liabilities, petitioners are claiming either that (1) as a result of the discharge their tax liability no longer exists or (2) regardless of the continuing existence of the debt, as a result of the discharge the amount of tax they are liable for is zero.

Whether a taxpayer is challenging the existence or amount of the underlying tax liability is relevant because it determines the standard of review we apply. If the validity of the underlying tax liability is properly at issue, the Court reviews the matter on a de novo basis; however, if the validity of the underlying tax liability is not properly at issue, the Court reviews the Commissioner's administrative determination for an abuse of discretion. Sego v. Commissioner, 114 T.C. 604, 610 (2000); Goza v. Commissioner, 114 T.C. 176, 181-182 (2000). We adopted these standards of review based on the legislative history of section 6330:

> Where the validity of the tax liability was properly at issue in the hearing, and where the determination with regard to the tax liability is part of the appeal, no levy may take place during the pendency of the appeal. The amount of the tax liability will in such cases be reviewed by the appropriate court on a de novo basis.

> Where the validity of the tax liability is not properly part of the appeal, the taxpayer may challenge the determination of the appeals officer for abuse of discretion. * * *

H. Conf. Rept. 105-599, at 266 (1998), 1998-3 C.B. 747, 1020; Sego v. Commissioner, supra at 609-610; Goza v. Commissioner, supra at 181.  I see no reason to depart from our established case law.

The majority opinion does not explicitly state what standard of review it applies.  After concluding that we have jurisdiction to determine whether the bankruptcy court discharged petitioners from their unpaid tax liabilities, the majority opinion analyzes the discharge order of the bankruptcy court, the bankruptcy code, and existing precedent and concludes that the bankruptcy court did not discharge petitioners from their unpaid tax liabilities. Majority op. pp. 12-15.  This analysis appears to be a review of respondent's determination on a de novo basis.  If we are not reviewing the existence or amount of the underlying tax liability a de novo review would be inappropriate.[1]  Sego v. Commissioner, supra at 610; Goza v. Commissioner, supra at 181-182.

The resolution of this case may not depend on what standard of review we apply; even so, we should apply the correct standard

---

[1]  It is my opinion, however, that we should be applying a de novo standard of review in this case because I believe petitioners are challenging the existence or amount of the underlying tax liability.

of review in this and future cases.[2]

LARO, J., agrees with this concurring opinion.

---

[2] Furthermore, applying a de novo standard of review where the validity of the underlying tax liability is not in issue raises questions about our holdings Sego v. Commissioner, 114 T.C. 604 (2000), and Goza v. Commissioner, 114 T.C. 176 (2000).