Chiechi, Judge: The petition in this case was filed in response to a notice of determination concerning collection action(s) under section 6320 and/or 6330[1] (notice of determination). FINDINGS OF FACT Most of the facts have been stipulated and are so found. At the time petitioners filed the petition in this case, they resided in New York, New York. On December 12, 1996, petitioners jointly filed late Form 1040, U.S. Individual Income Tax Return (Form 1040), for each of their taxable years 1994 (1994 return) and 1995 (1995 return).[2] In their 1994 return, petitioners reported that they owed $6,680 in tax. In their 1995 return, petitioners reported that they owed $8,874 in tax. When petitioners filed Forms 1040 for their taxable years 1994 and 1995, they did not pay the respective amounts of tax that they owed for those years. On February 3, 1997, respondent assessed petitioners’ tax, as well as any penalties and interest as provided by law, for each of their taxable years 1994 and 1995. In April 1998, petitioners jointly filed Form 1040 for their taxable year 1997 (1997 return). In their 1997 return, petitioners claimed a refund of $1,741 (petitioners’ 1997 overpayment). On April 15, 1998, when petitioners’ 1997 return was due, petitioners’ unpaid tax liability for 1990 (petitioners’ unpaid 1990 liability) exceeded $1,741, the amount of petitioners’ 1997 overpayment. On a date after April 15, 1998, and before June 8, 1998, that is not disclosed by the record, respondent applied petitioners’ 1997 overpayment as a credit against petitioners’ unpaid 1990 liability; i.e., respondent used that overpayment to offset part of that liability.[3] On May 18, 1998,[4] petitioners filed a petition (bankruptcy petition) in the U.S. Bankruptcy Court for the Southern District of New York, thereby commencing a bankruptcy proceeding under chapter 7 of title 11 of the United States Code. Attached to petitioners’ bankruptcy petition was a document entitled “Schedule E — Creditors Holding Unsecured Priority Claims” (petitioners’ bankruptcy Schedule E). Petitioners’ bankruptcy Schedule E listed the Internal Revenue Service as a creditor with respect to a claim totaling $20,000 relating to petitioners’ “taxes for 1991, 1992, 1993, 1994, 1995, & 1996.”[5] On September 25, 1998, the U.S. Bankruptcy Court for the Southern District of New York entered a “DISCHARGE OF DEBTOR, ORDER OF FINAL DECREE” (September 25, 1998, discharge order). The September 25, 1998, discharge order provided in pertinent part: IT IS ORDERED THAT: 1. The Debtor is released from all dischargeable debts. 2. Any judgment not obtained in this court is null and void as to the personal liability of the Debtor(s) regarding the following: (a) debts dischargeable under 11 U.S.C. § 523(a); (b) debts alleged to be excepted from discharge under 11 U.S.C. § 523(a)(2),(4),(6) or (15) unless determined by this court to be nondischargeable; (c) debts determined by this court to be discharged. On April 15, 1999, petitioners jointly filed Form 1040 for their taxable year 1998 (1998 return). In their 1998 return, petitioners (1) reported a total tax of $3,390.24, (2) reduced that amount by (a) $399.96, which represented tax previously withheld, and (b) $1,741, which represented petitioners’ 1997 overpayment,[6] and (3) reported that they owed $1,249.28 in tax for their taxable year 1998. When petitioners filed Form 1040 for their taxable year 1998, they did not pay the amount of tax that they owed for that year. On June 21, 1999, respondent assessed petitioners’ tax, as well as any penalties and interest as provided by law, for their taxable year 1998. On January 26, 2001, respondent filed a notice of Federal tax lien in New York County, New York, with respect to petitioners’ taxable years 1994, 1995, and 1998. That notice showed in pertinent part: Taxable year Unpaid balance of assessment 1994 . $9,850.51 1995 . 11,938.14 1998 . 1,568.62 (We shall refer to the foregoing unpaid balance of assessment for each of petitioners’ taxable years 1994, 1995, and 1998, as well as any accrued interest thereon not yet assessed, as petitioners’ unpaid liability for each of those years.) On January 31, 2001, respondent mailed to petitioners a notice informing them that respondent had filed a Federal tax lien with respect to petitioners’ unpaid liability for each of their taxable years 1994, 1995, and 1998 and that they had a right to a hearing (Appeals Office hearing) with respect to that lien. On February 8, 2001, petitioners filed Form 12153, Request for a Collection Due Process Hearing (Form 12153). In an attachment to Form 12153, petitioners stated in pertinent part: First, may we state for the record that your intent to enact a lien against any assets, jobs, or personal property or finances that we may have is a grave error. We insist that you cease from any impending actions to avert any embarrassment or possible legal consequences, which can thus be avoided. We trust that you will fax us a statement immediately of your intent to suspend action as outlined in your (collection appeals rights). Second, we are eager to finally put closure to this outstanding tax matter for the years indicated, and we trust that you will work fairly and cooperatively with us in reaching a mutual resolution. We feel our position of not owing the outstanding balance for which payment is being requested is based on the bankruptcy court decree under case number (98-43339) AJG, dated September 25, 1998. (see attached copy). The tax years 1994 and 1995 were part of this charge off through bankruptcy and were granted along with other years that have already been resolved. The IRS was well informed of our intent to charge off the aforementioned years, and had ample time to question, refute, or object to our intent to charge off said years. A period of 4 months passed without objection either in writing or in person prior to the final decree being rendered on 9/25/98 by the Honorable Judge Arthur J. Gonzalez. Therefore, once the charge off was finalized, we were under the complete understanding that these tax years were no longer an issue and that the entire matter had been acceptably resolved. On June 17, 1999, a hand written communiqué was sent to our attention by a customer service representative * * * instructing us to send you a copy of our discharge papers to the IRS * * *. We were left with the understanding that once we complied with this request, the necessary adjustment to our accounts would be made and this matter would no longer be an issue. Well, we complied with this request and to no avail; we are still dealing with this matter almost two years later. So, let me make our position very clear, we do not wish to battle with you over what seems to be a major misunderstanding. If in fact the amounts in question have been legally charged off for the years 1994 and 1995, then a letter of acknowledgement indicating that the charge is acceptable will satisfy our request for resolution. If in fact you do not agree with the charge off and you wish to discuss this with us in person, we will comply with a prearranged visit in order to reach an amicable resolve that both sides can live with. However, it must be understood upon receipt of this letter that all actions to implement a lien, garnishment of income, seizure of assets or any other punitive actions are immediately suspended without prejudice, and a notice acknowledging such will be forthcoming to abate any undue concern. With regard to tax year 1998, this year was not part of the bankruptcy charge off, however, the amount in question arises from a deduction taken from a refund due us that was used to pay for taxes for one of the years that was charged off. When we filed our taxes for 1998, the refund due us from 1997 that was applied to a year charged off, was reclaimed as a deduction in 1998. Evidently your account specialist did not agree with our accountant’s reclaiming that refund, so arose the outstanding tax debt. On May 14, 2001, respondent held a telephonic Appeals Office hearing with petitioners. On August 9, 2001, the Appeals Office mailed to petitioners a notice of determination regarding the Federal tax lien that respondent had filed with respect to petitioners’ unpaid liability for each of their taxable years 1994, 1995, and 1998. That notice stated in pertinent part: Summary of Determination You protested the filing of the Notice of Federal Tax Lien (NFTL) because you believed 1994 and 1995 tax years had been discharged in a bankruptcy proceeding. The 1998 tax liability is also in dispute. You are incorrect in your assumption that 1994 and 1995 were discharged in bankruptcy. They did not qualify as dischargeable debts and survived the bankruptcy. The liability for 1998 arose from a disallowed deduction and is considered a valid liability. # # # ‡ * # * Relevant Issues Presented by the Taxpayer: You believe the 1994 and 1995 liabilities were discharged under the bankruptcy proceeding docketed as 98-43339. The bankruptcy petition was filed on 05/08/1998 and listed these and prior years. The discharge was dated 09/28/1998. Thus, the lien for these two years would be erroneous. You further believe that a refund due to you for tax year 1997 was improperly applied to the liability for 1990, a year that was discharged. When you filed your 1998 return you claimed the amount of the refund as a deduction. This claim was disallowed and the liability arose. It is your contention that the refund is due to you and there should be no liability for 1998 and therefore, no reason to file the lien. Balancing Efficient Collection and Intrusiveness: It is necessary to balance the need to efficiently collect the outstanding liability against the taxpayers’ legitimate concerns that collection activity is not overly intrusive. In this case, you are mistaken in your belief that the 1994 and 1995 liabilities were discharged. Under bankruptcy law 11 USC Sec. 523(a)(l)(B)(ii), the debt in respect to a tax is not discharged if the return was filed after two years before the date of the filing of the petition. The returns for 1994 and 1995 were filed 02/03/1997. To be dischargeable they had to be filed no later than 05/08/1996. Therefore, by statute, they were not discharge-able. The refund you expected for 1997 became part of the bankruptcy estate when you filed the petition for Chapter 7. This is a liquidation of assets and provides the mechanism for taking control of the property of the debtor. You no longer had an interest in the property of the bankruptcy estate therefore you lack standing to challenge the treatment of the refund. See In re Gucci, 126 F.3d 380, 388 (2d Cir. 1997). The disallowance of the deduction of the amount of the refund was the correct action and the liability created by the disallowance is due and owing. All legal and procedural guidelines were met prior to the filing of the NFTL. The years in question are based on valid assessments. The lien is considered to be the least intrusive method of protecting the Government’s interest in the collection of the debt. The determination * * * to file the lien is sustained. OPINION In support of their position that respondent may not proceed with collection with respect to their taxable years 1994 and 1995, petitioners contend that the U.S. Bankruptcy Court for the Southern District of New York discharged them from their respective unpaid liabilities for such years. Respondent does not dispute that if we find that that court discharged petitioners from such unpaid liabilities, respondent may not proceed with the collection action as determined in the notice of determination with respect to petitioners’ taxable years 1994 and 1995. However, respondent disagrees with petitioners’ contention that the U.S. Bankruptcy Court for the Southern District of New York discharged petitioners from their respective unpaid liabilities for those years. We must first determine whether we have jurisdiction to resolve the parties’ dispute over whether that court discharged petitioners from such unpaid liabilities.[7] It is the position of the parties that the Court has that jurisdiction. Where the Court has jurisdiction over the underlying tax liability, the Court has jurisdiction to review a determination by the Appeals Office to proceed by lien with respect to any such unpaid liability. See sec. 6330(d)(1).[8] In the instant case, the Appeals Office determined in the notice of determination, inter alia, that the U.S. Bankruptcy Court for the Southern District of New York did not discharge petitioners from their respective unpaid liabilities for their taxable years 1994 and 1995 and that respondent may proceed by lien with respect to such liabilities. We have held in deficiency proceedings commenced in the Court under section 6213 that we do not have jurisdiction to determine whether a U.S. bankruptcy court has discharged a taxpayer from an unpaid tax liability in a bankruptcy proceeding instituted by such taxpayer. Neilson v. Commissioner, 94 T.C. 1, 9 (1990); Graham v. Commissioner, 75 T.C. 389, 399 (1980). In so holding, we relied on Swanson v. Commissioner, 65 T.C. 1180, 1184 (1976), in which we observed that an action brought for redetermination of a deficiency “has nothing to do with collection of the tax nor any similarity to an action for collection of a debt”. In contrast to a deficiency proceeding, a lien proceeding commenced in the Court under section 6330(d)(1), such as the instant lien proceeding, is closely related to and has everything to do with collection of a taxpayer’s unpaid liability for a taxable year. We must determine in the instant lien proceeding whether respondent may proceed with the collection action as determined in the notice of determination with respect to, inter alia, petitioners’ taxable years 1994 and 1995. Whether the U.S. Bankruptcy Court for the Southern District of New York discharged petitioners from their respective unpaid liabilities for those years is an issue that has a direct bearing on whether respondent may proceed with the lien at issue.[9] We hold that in the instant lien proceeding commenced under section 6330(d)(1) the Court has jurisdiction to determine whether the U.S. Bankruptcy Court for the Southern District of New York discharged petitioners from such unpaid liabilities. Having held that we have jurisdiction to resolve the dispute between the parties over whether the U.S. Bankruptcy Court for the Southern District of New York discharged petitioners from their respective unpaid liabilities for their taxable years 1994 and 1995, we now address that dispute. An individual debtor is not to be discharged in a bankruptcy proceeding from certain specified categories of debts. 11 U.S.C. sec. 523(a) (2000). The first such category is described in pertinent part in 11 U.S.C. sec. 523(a)(1) as follows: § 523. Exceptions to discharge (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title [title 11] does not discharge an individual debtor from any debt— (1) for a tax or a customs duty— (A) of the kind and for the periods specified in section 507(a)(2) or 507(a)(8) of this title, whether or not a claim for such tax was filed or allowed; (B) with respect to which a return, if required— (i) was not filed; or (ii) was filed after the date on which such return was last due, under applicable law or under any extension, and after two years before the date of the filing of the petition; * * * Petitioners argue that their respective unpaid liabilities for their taxable years 1994 and 1995 do not fit within the exception to discharge set forth in 11 U.S.C. sec. 523(a)(l)(B)(ii). According to petitioners, only if the taxes were filed after 2 years before the date of filing of the petition would the years in question be non dischargeable [sic]. The tax years in question were filed 17 months before the date of the petition and not after 2 years before the date of the petition. The above-quoted argument of petitioners misconstrues and misapplies 11 U.S.C. sec. 523(a)(l)(B)(ii). An individual debtor is not discharged in a bankruptcy proceeding from a debt for tax with respect to which a return is filed after the date on which such return was last due and after 2 years before the date of the filing of the bankruptcy petition. 11 U.S.C. sec. 523(a)(l)(B)(ii). In other words, an individual debtor is not discharged in a bankruptcy proceeding from a debt for tax with respect to which a return is filed late and within the 2-year period immediately preceding the filing of the bankruptcy petition. E.g., Young v. United States, 535 U.S. 43, 48-49 (2002). The September 25, 1998, discharge order of the U.S. Bankruptcy Court for the Southern District of New York provided in pertinent part that petitioners were “released from all dischargeable debts.” In the instant case, petitioners’ 1994 return and petitioners’ 1995 return both were filed late on December 12, 1996. Petitioners filed their bankruptcy petition on May 18, 1998. On the record before us, we find that petitioners filed their 1994 return and their 1995 return after the respective dates on which such returns were last due and after 2 years before the date on which they filed their bankruptcy petition. See 11 U.S.C. sec. 523(a)(l)(B)(ii); see also Young v. United States, supra. We further find on that record that pursuant to 11 U.S.C. sec. 523(a)(l)(B)(ii) the U.S. Bankruptcy Court for the Southern District of New York did not discharge petitioners from their respective unpaid liabilities for their taxable years 1994 and 1995. We now consider petitioners’ unpaid liability for 1998. It is petitioners’ position that respondent should have applied petitioners’ 1997 overpayment to offset part of their unpaid liability for 1998, and not their unpaid liability for 1990. Respondent argues that pursuant to section 6402(a) respondent’s application of petitioners’ 1997 overpayment as a credit against petitioners’ unpaid 1990 liability was proper. Petitioners do not address that argument.[10] Section 6402(a) provides in pertinent part: In the case of any overpayment, the Secretary * * * may credit the amount of such overpayment * * * against any liability in respect of an internal revenue tax on the part of the person who made the overpayment * * * When petitioners filed their 1997 return in April 1998, they had an unpaid liability with respect to their taxable year 1990 that exceeded the amount of petitioners’ 1997 overpayment shown in that return. We hold that section 6402(a) authorized respondent to credit petitioners’ 1997 overpayment against their unpaid 1990 liability. We now address what we understand to be petitioners’ position that the Court should review respondent’s failure to abate any penalties and interest under section 6404 with respect to their taxable years 1994, 1995, and 1998 and should abate any such penalties and interest. We turn first to petitioners’ position regarding respondent’s failure to abate interest under section 6404. The record does not establish that petitioners raised at their Appeals Office hearing respondent’s failure to abate interest under section 6404.[11] Consequently, we shall not consider that matter.[12] See Magana v. Commissioner, 118 T.C. 488, 493-494 (2002); Miller v. Commissioner, 115 T.C. 582, 589 n.2 (2000); see also sec. 301.6320-1(0(2), Q&A-F5, Proced. & Admin. Regs. We turn next to petitioners’ position regarding respondent’s failure to abate penalties under section 6404.[13] The record does not establish that petitioners raised at their Appeals Office hearing respondent’s failure to abate penalties under section 6404.[14] Consequently, we shall not consider that matter.[15] See Magana v. Commissioner, supra; Miller v. Commissioner, supra; see also sec. 301.6320-1(0(2), Q&A-F5, Proced. & Admin. Regs. Based upon our examination of the entire record before us, we find that respondent may proceed with the collection action as determined in the notice of determination with respect to each of petitioners’ taxable years 1994, 1995, and 1998. We have considered all of petitioners’ arguments and contentions that are not discussed herein, and we find them to be without merit and/or irrelevant. To reflect the foregoing, Decision will be entered for respondent. Reviewed by the Court. Cohen, Swift, Colvin, Beghe, Foley, Thornton, and Marvel, JJ., agree with this majority opinion. All section references are to the Internal Revenue Code in effect at all relevant times. All Rule references are to the Tax Court Rules of Practice and Procedure. Petitioners’ 1995 return was due on Apr. 15, 1996. The record does not establish when petitioners’ 1994 return was due. However, the maximum extension of time that respondent could have granted for the filing of petitioners’ 1994 return was 6 months. Sec. 6081(a). In a notice dated June 8, 1998 (June 8, 1998, notice) relating to petitioners’ taxable year 1997, respondent informed petitioners that respondent had applied petitioners’ 1997 overpayment to “OTHER FEDERAL TAXES” and that petitioners were not entitled to any refund for their taxable year 1997. Only the first page of the June 8, 1998, notice is part of the instant record. The portion of that notice which showed, inter alia, the “OTHER FEDERAL TAXES” to which respondent applied petitioners’ 1997 overpayment is not part of the record in this case. However, the parties stipulated that respondent applied the 1997 overpayment as a credit against petitioners’ unpaid 1990 liability. The parties stipulated that petitioners filed their bankruptcy petition on May 8, 1998. That stipulation is clearly contrary to the date of May 18, 1998, that the U.S. Bankruptcy Court for the Southern District of New York stamped on that petition, and we shall disregard that stipulation. See Cal-Maine Foods, Inc. v. Commissioner, 93 T.C. 181, 195 (1989). The record establishes, and we have found, that petitioners filed their bankruptcy petition on May 18, 1998. The only other creditor listed in petitioners’ bankruptcy Schedule E was the New York State Department of Taxation and Finance with respect to a claim totaling $7,000 relating to petitioners’ “TAXES FOR 1991, 1992, 1993. 1994, 1995 & 1996.” Respondent did not apply petitioners’ 1997 overpayment as a credit against the total tax reported in petitioners’ 1998 return. That is because, as we found above, respondent had previously applied that overpayment as a credit against petitioners’ unpaid 1990 liability. Shortly after having received the parties’ respective trial memoranda in this case, the Court advised the parties during a telephonic conference, inter alia, that an issue exists as to whether the Court has jurisdiction to resolve the dispute that they discussed in such memoranda over whether the U.S. Bankruptcy Court for the Southern District of New York discharged petitioners from their respective unpaid liabilities for their taxable years 1994 and 1995. At the beginning of the trial in this case, the Court reminded the parties about that jurisdictional issue. After that trial, the Court directed the parties to address in the posttrial briefs the jurisdictional issue that the Court had raised. The instant case deals with a lien, which is subject to sec. 6320. Sec. 6320(c) provides that “subsections (c), (d) (other than paragraph (2)(B) thereof), and (e) of section 6330 [relating to proposed levies] shall apply.” Sec. 6330(c)(2) allowed petitioners to raise at their Appeals Office hearing any relevant issue with respect to their respective unpaid liabilities for their taxable years 1994, 1995, and 1998, including “(ii) challenges to the appropriateness of collection actions”. Sec. 6330(c)(2)(A). Respondent does not dispute that petitioners’ claim at their Appeals Office hearing that the U.S. Bankruptcy Court for the Southern District of New York discharged them from their respective unpaid liabilities for their taxable years 1994 and 1995, which are the subject of a lien, raised a relevant issue that challenges the appropriateness of such lien. Instead, for the first time on brief, petitioners contend that respondent violated the automatic stay imposed by 11 U.S.C. sec. 362(a) (2000) when respondent applied petitioners’ 1997 overpayment as a credit against their unpaid 1990 liability. We shall not consider that contention. The record does not establish that petitioners raised that contention at their Appeals Office hearing, see Magana v. Commissioner, 118 T.C. 488, 493-494 (2002); Miller v. Commissioner, 115 T.C. 582, 589 n.2 (2000); see also sec. 301.6320-1(0(2), Q&A-F5, Proced. & Admin. Regs., or at trial, see Elrod v. Commissioner, 87 T.C. 1046, 1070 (1986); Robertson v. Commissioner, 55 T.C. 862, 865 (1971). In any event, we note that, as pertinent here, the automatic stay imposed by 11 U.S.C. sec. 362(a) was effective on May 18, 1998, the date on which petitioners filed their bankruptcy petition in the U.S. Bankruptcy Court for the Southern District of New York. See 11 U.S.C. sec. 362(a). In April 1998, petitioners filed their 1997 return, which showed petitioners’ 1997 overpayment. The notice informing petitioners that respondent had applied petitioners’ 1997 overpayment as a credit against another tax liability of petitioners was dated June 8, 1998. We find that the record does not establish that respondent applied petitioners’ 1997 overpayment as a credit against petitioners’ unpaid 1990 liability on or after May 18, 1998, the date on which petitioners filed their bankruptcy petition. In support of their contention that they raised at their Appeals Office hearing respondent’s failure to abate interest under sec. 6404, petitioners rely on a document that they attached to their answering brief and that is not part of the instant record. The Court has disregarded that document. See Rule 143(b). Assuming arguendo (1) that the record before us had established that petitioners raised at their Appeals Office hearing respondent’s failure to abate interest under sec. 6404 with respect to their taxable years 1994, 1995, and 1998 and (2) that we concluded that we have jurisdiction under sec. 6404 to consider petitioners’ request that we review such failure, see Katz v. Commissioner, 115 T.C. 329, 340-341 (2000), on the instant record, we find that petitioners have not shown that respondent abused respondent’s discretion in failing to abate interest under sec. 6404 for any of their taxable years 1994, 1995, and 1998. See sec. 6404(h). In fact, we find on that record that petitioners have failed to establish any error or delay attributable to an officer or employee of respondent being erroneous or dilatory in performing (1) a ministerial act within the meaning of sec. 6404(e) requiring an abatement of interest with respect to their taxable years 1994 and 1995 and (2) a ministerial or managerial act within the meaning of sec. 6404(e) requiring an abatement of interest with respect to their taxable year 1998. See Katz v. Commissioner, supra at 341. In this connection, at trial petitioner Howard Washington (Mr. Washington) testified about several alleged acts of certain employees of the Internal Revenue Service, which petitioners contend require abatement of interest under sec. 6404. We find that none of the alleged acts about which Mr. Washington testified qualifies as a ministerial act or a managerial act within the meaning of sec. 6404(e). See sec. 301.6404-2(b)(l) and (2), Proced. & Admin. Regs. The record does not disclose the nature of the penalties for which respondent contends petitioners are liable. In support of their contention that they raised at their Appeals Office hearing respondent’s failure to abate penalties under sec. 6404, petitioners rely on a document that they attached to their answering brief and that is not part of the instant record. The Court has disregarded that document. See Rule 143(b). Assuming arguendo that the record before us had established that petitioners raised at their Appeals Office hearing respondent’s failure to abate any penalties under sec. 6404 with respect to their taxable years 1994, 1995, and 1998, we hold that the Court does not have jurisdiction to review petitioners’ request that we review any such failure. See sec. 6404(h); see also Woodral v. Commissioner, 112 T.C. 19, 21 n.4 (1999).