[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
April 6, 2005
THOMAS K. KAHN
CLERK

_____

No. 04-11089

_____

Tax Court Docket No. 2874-03L

DARREL R. MEADOWS,

Petitioner-Appellant,

versus

COMMISSIONER OF INTERNAL REVENUE,

Respondent-Appellee.

_____

Appeal from a Decision of the
United States Tax Court

_____

**(April 6, 2005)**

Before ANDERSON, DUBINA and BLACK, Circuit Judges.

PER CURIAM:

Darrell Meadows appeals the Tax Court's grant of the Internal Revenue

Service's ("IRS's") motion for summary judgment. Meadows argued before the

Tax Court that the IRS violated the bankruptcy court's stay when it applied the

$10,000 it accepted from Meadows's wife to his 1988 tax liability, which was later discharged in bankruptcy, and not his 1992 and 1993 liabilities, which were not discharged. The Tax Court declined to address the bankruptcy issues urged by Meadows.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Meadows did not file income tax returns for the years 1988 to 1993 until 1993.[1] When he belatedly filed in 1993, he did not pay any of the tax he owed for the years 1988-1991 and paid only a small fraction of the amounts he owed for 1992 and 1993. In response, the IRS assessed the tax, interest, and penalties. After Meadows failed to pay those amounts, a lien for the years 1988-1992 arose on the Meadowses' residence which the IRS secured with a notice filed in October 1993. The IRS rejected Meadows's submitted offer in compromise and collected about six hundred dollars from his bank account in 1994. The IRS then filed another lien notice, this time for the tax years 1988-1993.

The IRS determined that Meadows's wife held their residence as his nominee because she did not have enough income to pay the mortgage and the house was in her name alone. On August 16, 1995, the IRS served a notice of levy and seizure on her in order to collect the unpaid liabilities for 1988-1992. Mrs.

---

[1] He did not file joint returns with his wife; she had no income for those years.

2

Meadows obtained a loan in the amount of $10,000, and offered that to the IRS in satisfaction of the lien, representing that Meadows's equity interest in the home was only $10,000. The assigned IRS agent accepted Mrs. Meadows's offer, stating that when the IRS received the money, it would release the lien on the house and apply the proceeds to Meadows's liability, "starting with the oldest tax period." Mrs. Meadows remitted the check on the same day, September 25, 1995.

Meanwhile, Meadows filed for bankruptcy protection on September 1, 1995. His bankruptcy schedules represented that he did not own any real property or any equitable interests in real property. He listed his 1992 and 1993 tax liabilities as unsecured priority claims and his 1988-1991 tax liabilities as unsecured nonpriority claims.[2]

On December 21, 1995, the bankruptcy court issued a discharge order, releasing Meadows from all dischargeable debts. On October 24, 2001, the IRS sent Meadows a final notice of intent to levy to collect $15,142.33 for the 1992 tax liability and $16,213.45 for the 1993 tax liability. It also informed him of his right to a collection due process ("CDP") hearing; Meadows submitted a request for a CDP hearing for the tax years 1992 and 1993, which raised two issues. First, he

---

[2] The IRS, in its brief, states that because it had already filed Notices of Federal Tax Lien for all of the years, all of these debts were actually secured debts.

asked whether the IRS had illegally placed a nominee lien on the residence held in his wife's name and second, whether the $10,000 was wrongfully applied to a tax period that had been discharged. In this filing, he revealed that he thought that the automatic stay only applied to the debts that would have been discharged later.

The Appeals Office determined that Mrs. Meadows's failure to appeal the nominee lien barred a contest of the lien in the CDP hearing. The Appeals Office decision also declined to find a violation of the stay because the agreement to release the lien was reached before Meadows filed for bankruptcy, and it found controlling the agreement between Mrs. Meadows and the revenue officer, that the $10,000 would apply to the oldest tax period. Finally, it noted that although Meadows had expressed an interest in exploring collection alternatives, he had failed to provide the necessary information. Therefore, the Appeals Office concluded that collection of Meadows's 1992 and 1993 tax liabilities could proceed.

Meadows then appealed to the Tax Court and both parties filed motions for summary judgment. Meadows contended that the $10,000 represented his equitable interest in the property, that the collection and application of those funds to the 1988 liability violated the bankruptcy stay, and that the money should be applied to the 1992 and 1993 tax liabilities, which he asserted were unaffected by

the stay. The IRS argued that the Tax Court lacked jurisdiction to address the issue raised by Meadows; that the release of the lien rendered any issues about it moot; that Meadows did not have the right to designate how his wife's payment should be applied; that no designation of payment was made; that any violation of the stay should be addressed in bankruptcy court; that the remedy for violation of the stay would be to return the money to Mrs. Meadows; that the payment was made by a nondebtor so it did not violate the stay; and that the Appeals Office did not abuse its discretion regarding the feasibility of collection alternatives.

The Tax Court granted the IRS's motion for summary judgment. First it stated that its jurisdiction allowed it only to review the actions of the Appeals Office for abuse of discretion. Then it stated that although it had the authority "to determine whether a bankruptcy court has discharged the taxes otherwise due for a particular year . . ., it has not been definitively established whether such authority extends to questions whether respondent has violated the bankruptcy automatic stay and, if so, the appropriate remedy for such violation." Decision at 3. The court continued that even if it had the authority, it might still defer to the bankruptcy court based on comity and judicial efficiency as well as its recognition that it does not deal with bankruptcy matters and does not have the expertise that the bankruptcy court would. Id. at 3-4 (citing Washington v. Comm'r, 120 T.C.

5

114, 125 (2003) (Wells, J., concurring)).

## II.  DISCUSSION

<u>Did the Tax Court abuse its discretion by declining to exercise its jurisdiction?</u>

Congress enacted 26 U.S.C. § 6330 in 1998.  Subsection (b) created the

right to CDP hearings for collections and (c) governs the content of the hearing.[3]

_____

[3]  Subsections 6330(b) & (c) provide:

(b) Right to fair hearing.--

> (1) In general.--If the person requests a hearing under subsection (a)(3)(B), such hearing shall be held by the Internal Revenue Service Office of Appeals.
> (2) One hearing per period.--A person shall be entitled to only one hearing under this section with respect to the taxable period to which the unpaid tax specified in subsection (a)(3)(A) relates.
> (3) Impartial officer.--The hearing under this subsection shall be conducted by an officer or employee who has had no prior involvement with respect to the unpaid tax specified in subsection (a)(3)(A) before the first hearing under this section or section 6320. A taxpayer may waive the requirement of this paragraph.

(c) Matters considered at hearing.--In the case of any hearing conducted under this section--

> (1) Requirement of investigation.--The appeals officer shall at the hearing obtain verification from the Secretary that the requirements of any applicable law or administrative procedure have been met.
> (2) Issues at hearing.--

>> (A) In general.--The person may raise at the hearing any relevant issue relating to the unpaid tax or the proposed levy, including--

>>> (i) appropriate spousal defenses;
>>> (ii) challenges to the appropriateness of collection actions; and
>>> (iii) offers of collection alternatives, which may include the

6

In these hearings, taxpayers are allowed to challenge "any relevant issue relating to the unpaid tax." 26 U.S.C. § 6330(c)(2)(A). In subsection (d), Congress specified that judicial review is available by "the Tax Court (and the Tax Court shall have jurisdiction with respect to such matter); or if the Tax Court does not have jurisdiction of the underlying liability, [by] a district court of the United States." 26 U.S.C. § 6330(d). The statute is silent on what manner of review the Tax Court has over these appeals.

posting of a bond, the substitution of other assets, an installment agreement, or an offer-in-compromise.

(B) Underlying liability.--The person may also raise at the hearing challenges to the existence or amount of the underlying tax liability for any tax period if the person did not receive any statutory notice of deficiency for such tax liability or did not otherwise have an opportunity to dispute such tax liability.

(3) Basis for the determination.--The determination by an appeals officer under this subsection shall take into consideration--

(A) the verification presented under paragraph (1);
(B) the issues raised under paragraph (2); and
(C) whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the person that any collection action be no more intrusive than necessary.

(4) Certain issues precluded.--An issue may not be raised at the hearing if--

(A) the issue was raised and considered at a previous hearing under section 6320 or in any other previous administrative or judicial proceeding; and
(B) the person seeking to raise the issue participated meaningfully in such hearing or proceeding.

This paragraph shall not apply to any issue with respect to which subsection (d)(2)(B) applies.

The Tax Court has consistently held that it does not have jurisdiction under 26 U.S.C. § 6213 (redetermination of deficiencies) to determine whether or not a bankruptcy court "had discharged a taxpayer from an unpaid tax liability in a bankruptcy proceeding instituted by such taxpayer."  Washington v. Comm'r, 120 T.C. 114, 120 (2003).  The court reached that determination because it reasoned that an action brought for redetermination of a deficiency under § 6213 "'has nothing to do with collection of the tax nor any similarity to an action for collection of a debt.'"  Id. (quoting Swanson v. Comm'r, 65 T.C. 1180, 1184 (1976)).  However, in Washington, the court determined that it did have jurisdiction under the new § 6330 to determine whether the bankruptcy court had discharged the taxpayers' "respective unpaid liabilities for those years" because it was an issue that had direct bearing on whether the Commissioner could proceed with the lien at issue.  Id.  However, several of the concurring judges cautioned that although the court had accepted jurisdiction, it was because the bankruptcy question was "relatively straight-forward."  Id. at 124-25 (Wells, J., concurring). Judge Wells further cautioned that

> it is possible that taxpayers will present this Court with
> more difficult questions that may be better suited for
> consideration by the Bankruptcy Court.  Under such
> circumstances, this Court may defer to a Bankruptcy
> Court to decide the matter.  Such deference would not be

8

> premised upon any concerns that we lack jurisdictional capacity to consider the issue. Rather it would be based upon considerations of comity and judicial efficiency, combined with our recognition that this Court does not deal with bankruptcy matters with the expertise that a Bankruptcy Court possesses.

Id. at 125; accord id. at 134-35 (Beghe, J., and Gerber, J., concurring) ("The bankruptcy discharge issue in the case at hand is a slam dunk . . .. Nothing the court does today will prevent us from revisiting, in subsequent collection cases in which bankruptcy discharge issues are raised, whether . . . we should defer to the Bankruptcy Court's expertise and authority to construe and apply its own order of discharge.").

This case presents the type of complex bankruptcy questions that Judge Wells predicted would be best left to the bankruptcy court. Unlike the taxpayers in Washington, Meadows does not seek a simple determination of whether or not his unpaid tax liability for the year 1988 has been discharged. Rather, he seeks a determination that the IRS violated the automatic stay when it accepted $10,000 from Meadows's wife to satisfy a nominee lien on property owned by his wife and applied it to an unpaid tax liability that, as it turns out, was later discharged by the bankruptcy court.

First of all, the requested relief that Meadows seeks–ordering the IRS to

apply the $10,000 to the 1992 unpaid tax liability–arguably would require the Tax Court to exercise equitable power to expand its statutorily prescribed jurisdiction. However, it is unclear whether or not the Tax Court has such equitable power. See Comm'r v. McCoy, 484 U.S. 3, 7, 108 S.Ct. 217, 219 (1987) ("The Tax Court is a court of limited jurisdiction and lacks general equitable powers."); see also United States v. Dalm, 494 U.S. 596, 611 n.8, 110 S.Ct. 1361, 1370 n.8 (1990) ("We have no occasion to pass upon the question whether Dalm could have raised a recoupment claim in the Tax Court."); Bokum v. Comm'r, 992 F.2d 1136, 1140 (11th Cir. 1993) ("The Tax Court has no equitable power to expand its statutorily prescribed jurisdiction.").  This raises a constitutional question: if a party's position urges the Tax Court to award relief that would exceed its statutorily prescribed jurisdiction, would that run afoul of Article III?  See generally Diane Fahey, The Tax Court's Jurisdiction over Due Process Appeals: Is it Constitutional?  55 Baylor L. Rev. 453, 454 (2003).  We need not decide in this case whether or not the Tax Court actually had jurisdiction to address the bankruptcy issues urged by Meadows.  We decide only that the Tax Court did not abuse its discretion in deferring such issues to the expertise and authority of the bankruptcy court, in light of the several reasons discussed herein.

We note that actions against creditors for violations of the automatic stay

10

are to be brought in the bankruptcy court. See 11 U.S.C. § 362(h) ("An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."); see also Langlois v. United States, 155 B.R. 818 (N.D. N.Y. 1993) (sitting in bankruptcy jurisdiction and holding that the IRS's application of a collected amount to penalties that were to be discharged in bankruptcy was a violation of the automatic stay). Thus, it is clear that the bankruptcy court is more knowledgeable than the Tax Court about the scope and effect of the automatic stay and about appropriate remedies.

Additionally, there are a number of other wrinkles that make Meadows's questions less straightforward than those raised in Washington and support the Tax Court's decision in this case not to address the bankruptcy issues. For instance, the lien was brought against Mrs. Meadows, as the owner of the house, on account of Meadows's equitable interest in the property. However, Meadows did not list his equitable interest in the house in his bankruptcy petition, raising the issue of whether the bankruptcy stay was violated at all because it did not affect any property in the bankruptcy estate. Moreover, because the $10,000 was remitted by Meadows's wife, if acceptance of the $10,000 was a violation of the automatic stay, an issue is raised as to whether the appropriate remedy would be to

11

return the $10,000 to the wife.  Indeed, Meadows has not explained why he should be the beneficiary of any such remedy, rather his wife.  Finally, there is the question of laches and how that should play into an action to enforce a violation of the bankruptcy stay.  See In re Calder, 907 F.2d 953 (10th Cir. 1990) (discussing how equitable principles could preclude a challenge to a violation of the automatic stay);  Matthews v. Rosene, 739 F.2d 249, 251 (7th Cir. 1984) (holding that laches would bar a challenge to a violation of the stay).  The alleged violation here took place in 1995 but Meadows did not raise that issue until 2001; a bankruptcy court might determine that this was untimely.

In sum, the instant issues are not slam dunk issues, but rather raise complex issues of bankruptcy law involving the interpretation of the automatic stay and appropriate remedies for the violation thereof.  The court below had reasonable concerns as to whether addressing such issues would constitute the exercise of equitable powers exceeding the Tax Court's statutorily prescribed jurisdiction to handle its particularized area of law by intruding into the particularized area of law delegated by Congress to a different Article I court, the bankruptcy court.  In the particular circumstances of this case, which raises reasonable constitutional concerns and which involves complex bankruptcy issues better suited for the expertise and authority of the bankruptcy court, we cannot conclude that the Tax

Court abused its discretion in deferring to the expertise and authority of the bankruptcy court. Accordingly, the judgment of the Tax Court is AFFIRMED.