T.C. Summary Opinion 2006-35


UNITED STATES TAX COURT



OMAR URBINA PINEDA, Petitioner $\underline{v}$.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 3081-05S.              Filed February 27, 2006.


Omar Urbina Pineda, pro se.

Gavin L. Greene, for respondent.



ARMEN, Special Trial Judge:  This case was heard pursuant to the provisions of sections 6330(d) and 7463(f)(2) of the Internal Revenue Code in effect when the petition was filed.[1]  The

_____

[1]  Unless otherwise indicated, subsequent references to sections other than secs. 6320 and 6330 are to the Internal Revenue Code of 1986 in effect for 1999 and 2001, the taxable years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority.

This case arises from a petition filed in response to a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 (notice of determination) for the taxable years 1999 and 2001 (years in issue). After the parties' concessions concerning the amounts of earned income credit (EIC) to which petitioner is entitled for the years in issue, the issues for decision are:

(1) Whether respondent abused his discretion in failing to abate interest for the years in issue. We hold that he did not.

(2) Whether petitioner is liable for additions to tax for the years in issue. We hold that he is.

(3) Whether respondent abused his discretion in failing to consider an installment agreement. We hold that he did.

## Background

Some of the facts have been stipulated, and they are so found. We incorporate by reference the parties' stipulation of facts and accompanying exhibits.

At the time that the petition was filed, petitioner resided in Burbank, California.

During the years in issue, petitioner was going through a divorce and paying child support.

A.  Petitioner's Income Tax Return for 1999

On October 17, 2000, petitioner timely filed a Form 1040, U.S. Individual Income Tax Return, for the taxable year 1999. Petitioner attached, inter alia, to the return a Schedule C, Profit or Loss From Business.  On Schedule C, petitioner identified his business name as "Alfonsos of Hollywood" and his principal business or profession as "other leather and allied product mfg".  Petitioner reported net profit from his business on Schedule C of $4,254.  On the return, petitioner reported adjusted gross income (AGI) of $3,953, zero taxable income, and self-employment tax of $601.  He also claimed an EIC of $1,590 and a refund of $989.

On May 28, 2002, petitioner filed an amended return for the taxable year 1999.  On the amended return, petitioner reported AGI of $29,487, taxable income of $14,887, self-employment tax of $4,483, and total tax of $5,714.  He also claimed a child tax credit of $1,000 and an EIC of $233.  He did not remit payment with the amended return.

On the basis of petitioner's 1999 amended return, respondent assessed additional tax plus statutory interest and an addition to tax for failure to timely pay under section 6651(a)(2).[2]

---

[2]  On Oct. 28 and Nov. 11, 2002, respondent partially abated interest for reasons unexplained in the record.

B. <u>Petitioner's Income Tax Return for 2001</u>

On May 20, 2002, petitioner timely filed a Form 1040 for the taxable year 2001. Petitioner attached, inter alia, to the return a Schedule C on which he reported net profit from his business of $39,313. On the return, petitioner reported AGI of $37,486, taxable income of $24,986, self-employment tax of $5,555, and total tax of $8,398. He also claimed a child tax credit of $1,200. He then reported an amount owed of $8,730, which included an estimated tax penalty of $332. Petitioner did not remit payment with the return, and he did not make any estimated tax payments for 2001.

On the basis of petitioner's return, respondent assessed the tax shown on the return plus statutory interest, an addition to tax for failure to timely pay under section 6651(a)(2), and an addition to tax for failure to pay estimated tax under section 6654(a).

On December 13, 2002, petitioner filed an amended return for the taxable year 2001. On the amended return, petitioner reported AGI of $29,580, taxable income of $16,330, self-employment tax of $4,353, total tax of $5,302, and an estimated tax penalty of $188. He also claimed child tax credits of $1,500 and an EIC of $557. He did not remit payment with the amended return.

Respondent accepted petitioner's amended return and abated petitioner's tax accordingly.

## C. Final Notice Of Intent To Levy

On January 21, 2003, respondent sent petitioner a Final Notice Of Intent To Levy And Notice Of Your Right To A Hearing with respect to petitioner's outstanding tax liabilities for 1999 and 2001. See sec. 6330(a).

On February 19, 2003, petitioner timely filed a Form 12153, Request for a Collection Due Process Hearing (CDP hearing). On the Form 12153, petitioner stated:

> The IRS filed a Notice of Levy on 01/21/03, and actually mailed it on 01/31/03. In the interim, I requested for more time to file amended returns for 1999, 2000 & 2001 because of errors.[3]

On April 2, 2003, respondent's collection office forwarded the Form 12153 to respondent's Appeals Office. The Appeals Office received the case on April 7, 2003, and assigned the case to Appeals Officer Michael M. McDonnell on June 26, 2003.

On July 24, 2003, the Appeals officer sent petitioner a letter acknowledging that the Appeals Office had received petitioner's case and informing petitioner that the Appeals officer would be "unable to work your case for 90 to 120 day [sic]."

---

[3] We note that only taxable years 1999 and 2001 are in issue in the present case.

The Appeals officer sent petitioner a letter dated June 29, 2004, scheduling a hearing for July 12, 2004. The letter further directed petitioner to file his 2002 tax return and to provide proof of estimated tax payments for the taxable years 2002, 2003, and 2004. On July 12, 2004, the Appeals officer received the June 29, 2004 letter, which was returned to him marked "not deliverable as addressed, unable to forward".

On that same day, the Appeals officer telephoned petitioner at which time petitioner expressed an interest in an installment agreement. The Appeals officer directed petitioner to (1) file petitioner's 2002 and 2003 returns by July 28, 2004; (2) make estimated tax payments for 2004; and (3) complete Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals. The Appeals officer then scheduled another hearing for July 21, 2004. On July 13, 2004, the Appeals officer sent petitioner a letter documenting the terms established in their conversation.

On July 14, 2004, petitioner telephoned the Appeals officer to reschedule the hearing for July 16, 2004.

D. Petitioner's CDP Hearing

On July 16, 2004, petitioner attended a hearing with the Appeals officer. At the hearing, petitioner again expressed an interest in entering into an installment agreement. He requested

additional time to pay estimated tax payments for 2004 and to complete Form 433-A by August 4, 2004.

On July 29, 2004, petitioner submitted to the Appeals officer a completed Form 433-A and petitioner's returns for the taxable years 2002 and 2003. Form 433-A reported monthly income of $1,800 and total living expenses of $1,674. The Form 433-A in the record also contained the Appeals officer's handwritten notations indicating total income of $2,199 and total living expenses of $2,024.[4] The Appeals officer indicated in his notes that Form 433-A showed that petitioner "had very little ability to make installment payments". Petitioner did not make estimated tax payments by August 4, 2004, but the Appeals officer extended the deadline for the payments until August 9, 2004.

On July 30, 2004, the Appeals officer sent petitioner a letter acknowledging receipt of Form 433-A and petitioner's 2002 and 2003 returns and directing petitioner to submit proof by August 16, 2004, that petitioner's 2004 estimated tax payments were current.

On August 9, 2004, petitioner informed the Appeals officer that he could pay only one-half of the 2004 estimated tax payments with the balance payable in September 2004. On August 12, 2004, petitioner sent the Appeals officer a letter enclosing

---

[4] The Appeals officer calculated total income by dividing the net profit reported in petitioner's 2003 return by 12, and he increased living expenses by $350 for estimated tax payments.

a check of $1,075 for one-half of petitioner's 2004 estimated tax payments. The letter further indicated that petitioner would pay the balance in full on or before September 16, 2004.

On September 29, 2004, petitioner sent the Appeals officer a letter stating, inter alia, that he would be mailing the balance due for his 2004 estimated tax payment on October 4, 2004.

On October 4, 2004, petitioner sent the Appeals officer a letter enclosing a check of $1,074 for the remaining balance of petitioner's 2004 estimated tax payments.

By October 15, 2004, petitioner was in compliance with his tax obligations sufficient for consideration of a collection alternative such as an installment agreement. The Appeals officer determined, however, that there was an income discrepancy of $175 between Form 433-A and petitioner's 2003 return. The Appeals officer requested petitioner to submit additional financial information by November 4, 2004. On November 5, 2004, petitioner requested additional time. At a time not disclosed in the record, petitioner submitted bank and expense statements, business and rent invoices, and utility invoices. On November 16, 2004, the Appeals officer closed petitioner's case because petitioner failed to provide the requested information by the deadline.

E.  Notice of Determination

On January 19, 2005, respondent's Appeals Office issued to petitioner a notice of determination with respect to petitioner's outstanding liabilities for the years in issue.  In the notice of determination, respondent sustained the proposed levy because petitioner "failed to provide financial information requested."

F.  Petition

On February 17, 2005, petitioner filed with the Court a petition under section 6330(d) disputing respondent's determination.  Paragraph 4 of the petition states:

> I am petitioning the US Tax Court for relief of all accrued interest for 12/1999 & 12/2001 tax periods.  On 02/13/03, I submitted a "Request For A Collection Due Process Hearing" Form 12153, for 12/1999, 12/2000, & 12/2001 tax periods.  I did not hear from the IRS appeals office until 07/04, 17 months from the time I first filed Form 12153.  As a result of this unfair delay, the IRS appeals office caused the IRS to accrued [sic] additional interest on my 12/1999 & 12/2001 tax returns.  Finally, the IRS appeals office mismanaged my collection due process.

## Discussion

Section 6330 generally provides that the Commissioner cannot proceed with the collection by levy on a taxpayer's property until the taxpayer has been given notice of, and the opportunity for, an administrative review of the matter (in the form of an Appeals Office hearing) and, if dissatisfied, with judicial review of the administrative determination.  See Davis v.

Commissioner, 115 T.C. 35, 37 (2000); Goza v. Commissioner, 114 T.C. 176, 179 (2000).

Section 6330(c) prescribes the matters that the taxpayer may raise at an Appeals Office hearing.  In sum, section 6330(c)(2)(A) provides that the taxpayer may raise collection issues such as spousal defenses, the appropriateness of the Commissioner's intended collection action, and alternative means of collection.  Section 6330(c)(2)(B) further provides that the taxpayer may challenge the existence and amount of the underlying tax liability if the taxpayer did not receive a notice of deficiency for the tax in question or did not otherwise have an earlier opportunity to dispute the tax liability.  See Sego v. Commissioner, 114 T.C. 604, 609 (2000); Goza v. Commissioner, supra at 180-181; see also Magana v. Commissioner, 118 T.C. 488, 492 (2002); Wooten v. Commissioner, T.C. Memo. 2003-113.  Section 6330(d) provides for judicial review of the administrative determination in the Tax Court or a Federal District Court, as may be appropriate.

It is well settled that where the validity of the underlying tax liability is properly at issue in a collection review proceeding, the Court will review the matter de novo.  Goza v. Commissioner, supra at 181-182.  Where the validity of the underlying tax liability, however, is not properly at issue, the

Court will review the Commissioner's administrative determination for abuse of discretion.  <u>Id.</u>

In reviewing for abuse of discretion, we generally consider "only arguments, issues, and other matter that were raised at the collection hearing or otherwise brought to the attention of the Appeals Office."  <u>Magana v. Commissioner</u>, <u>supra</u> at 493; <u>Miller v. Commissioner</u>, 115 T.C. 582, 589 n.2 (2000), affd. per curiam 21 Fed. Appx. 160 (4th Cir. 2001); <u>Sego v. Commissioner</u>, <u>supra</u> at 612.

A.  <u>Interest Abatement</u>

If, as part of the CDP hearing, a taxpayer makes a request for abatement of interest, the Court has jurisdiction over the request for abatement of interest that is the subject of the Commissioner's collection activities.  <u>Katz v. Commissioner</u>, 115 T.C. 329, 340-341 (2000).

Clearly, petitioner raised the issue of interest abatement in the petition.  Respondent contends, however, that petitioner did not raise interest abatement at the CDP hearing.  Petitioner, on the other hand, contends that he did.  Therefore, we must first decide whether petitioner properly raised interest abatement at his CDP hearing.

Petitioner testified at trial that he discussed interest abatement with the Appeals officer.  The Appeals officer, however, testified that there was no discussion at the CDP

hearing relating to interest abatement.  Moreover, there is no reference in the notice of determination that petitioner requested interest abatement.  Other than his own testimony, the record does not establish that petitioner raised interest abatement in his CDP hearing such that it would be subject to review in this collection proceeding.  See Magana v. Commissioner, supra; Miller v. Commissioner, supra; see also sec. 301.6330-1(f)(2), Q&A-F5, Proced. & Admin. Regs.

In any event, assuming arguendo that the record established that petitioner raised interest abatement at the CDP hearing, that we have jurisdiction under section 6404 to consider petitioner's request for interest abatement, see Washington v. Commissioner, 120 T.C. 114, 123-124 (2003); Katz v. Commissioner, supra at 340-341, and that respondent's workload priorities may have constituted a managerial act, see sec. 301.6404-2(b)(1), Proced. & Admin. Regs.,[5] we conclude that petitioner failed to establish that respondent abused his discretion in failing to abate interest under section 6404.

Essentially, petitioner failed to demonstrate that he would have (or could have) paid his tax liabilities if the Appeals officer had begun working on petitioner's case as early as

---

[5]  We note that Form 4340, Certificate of Assessments, Payments, and Other Specified Matters, shows that respondent abated interest for 1999 on Oct. 28 and Nov. 11, 2002, for reasons unexplained in the record.

February 13, 2003 (the date of Form 12153), or July 24, 2003 (the date of the Appeals officer's letter informing petitioner that the Appeals officer could not work on petitioner's case for 90 to 120 days). Indeed, petitioner candidly admitted at trial that he did not have the financial resources to pay his outstanding liabilities at the time he filed his returns and at all relevant times throughout this collection action. It is well settled that if, notwithstanding respondent's error or dilatory act or omission, no earlier payment would have been made, then no abatement is called for. Wright v. Commissioner, T.C. Memo. 2004-69, affd. 125 Fed. Appx. 547 (5th Cir. 2005); see Hawksley v. Commissioner, T.C. Memo. 2000-354. Accordingly, we conclude that respondent did not abuse his discretion in failing to abate interest.

B. Additions to Tax

The income tax assessments against petitioner include additions to tax under section 6651(a)(2) for the years in issue and section 6654(a) for 2001. At trial, petitioner contested his liability for the additions to tax. This issue was not raised in the petition, see Rule 331(b)(4); however, respondent did not object. We therefore regard this issue as having been tried by consent as if it had been raised in the petition. See Rule 41(b).

Petitioner did not receive a notice of deficiency and did not otherwise have an opportunity to dispute the additions to tax relating to his income tax liabilities; therefore, he can challenge them during the section 6330 proceeding. Sec. 6330(c)(2)(B); Katz v. Commissioner, supra at 339. We review de novo respondent's determination with respect to these additions to tax.[6] See Goza v. Commissioner, 114 T.C. at 181-182.

We first address the addition to tax under section 6651(a)(2). Section 6651(a)(2) imposes an addition to tax for failure to pay tax shown on a return on or before the payment due date. The addition to tax is one-half percent of the amount shown as tax on a return for each month or fraction thereof during which the failure to pay continues, not exceeding 25 percent in the aggregate. Sec. 6651(a)(2). The addition to tax under section 6651(a)(2) does not apply, however, if the failure is due to reasonable cause and not due to willful neglect. Sec. 301.6651-1(c)(1), Proced. & Admin. Regs.; see United States v. Boyle, 469 U.S. 241, 245 (1985); Jackson v. Commissioner, 864

---

[6] Respondent has the burden of production with respect to additions to tax. Sec. 7491(c); see Swain v. Commissioner, 118 T.C. 358, 363 (2002); see also Higbee v. Commissioner, 116 T.C. 438, 446 (2001). Respondent, however, does not have the burden to introduce evidence regarding reasonable cause or substantial authority. Higbee v. Commissioner, supra at 446-447. On the basis of the record, we are satisfied that respondent has met his burden of production.

F.2d 1521, 1527 (10th Cir. 1989), affg. 86 T.C. 492 (1986); Crocker v. Commissioner, 92 T.C. 899, 912 (1989).

Petitioner may demonstrate reasonable cause for late payment by showing that he exercised ordinary business care and prudence in providing for payment of his tax liability and was nevertheless either unable to pay the tax or would suffer an undue hardship if he paid the tax by the due date.  Sec. 301.6651-1(c), Proced. & Admin. Regs.; see United States v. Boyle, supra at 246.  To constitute "undue hardship", the hardship must be more than an inconvenience to the taxpayer, and it must appear that substantial financial loss would result to the taxpayer from making payment by the due date.  Sec. 1.6161-1(b), Income Tax Regs.  "Willful neglect" is defined as a "conscious, intentional failure or reckless indifference." United States v. Boyle, supra at 245.

At the time that petitioner filed his returns, he failed to remit the amount shown as tax.  Petitioner contends that he did not remit payment for the years in issue because of financial hardship due to his personal expenses related to his divorce and child support payments and his business expenses.  Specifically, petitioner argues that he had substantial legal bills and that his business was struggling.  Although we are mindful that his personal and business circumstances constrained his financial resources, petitioner has nevertheless failed to establish that

he would have suffered substantial loss if he had paid his taxes by the due date. We also observe that adverse economic conditions do not necessarily constitute reasonable cause because almost every nonwillful failure to pay taxes is the result of financial difficulties. See Wolfe v. United States, 612 F.Supp. 605, 607-608 (D. Mont. 1985), affd. on other grounds 798 F.2d 1241 (9th Cir. 1986).

We therefore conclude that petitioner failed to demonstrate that his failure to timely pay tax shown on his returns was due to reasonable cause and not willful neglect. See sec. 301.6651-1(c), Proced. & Admin. Regs.; sec. 1.6161-1(b), Income Tax Regs. Accordingly, petitioner is liable for the additions to tax under section 6651(a)(2) for the years in issue.

We next address the addition to tax under section 6654 for the taxable year 2001. Section 6654(a) imposes an addition to tax for failure to make timely estimated income tax payments. Section 6654(e) contains several computational exceptions to application of the addition to tax. As relevant herein, there is no addition to tax under section 6654(a) if the tax shown on the return is less than $1,000, sec. 6654(e)(1), or the taxpayer did not have any liability for tax for the preceding taxable year, sec. 6654(e)(2).

Petitioner bears the burden of proving that he paid estimated tax or that any of the exceptions excuse him from

paying estimated tax.  See Rule 142(a); <u>Higbee v. Commissioner</u>, 116 T.C. 438, 446 (2001).  The addition to tax for failure to pay estimated tax is mandatory, unless petitioner can show that he qualifies for one of the exceptions.  <u>Grosshandler v. Commissioner</u>, 75 T.C. 1, 20-21 (1980) (citing <u>Estate of Ruben v. Commissioner</u>, 33 T.C. 1071, 1072 (1960)).

Petitioner did not pay estimated tax for the taxable year 2001.  Moreover, petitioner failed to show that his failure to timely pay estimated tax qualifies for one of the exceptions under section 6654(e).  See Rule 142(a).  Accordingly, petitioner is liable for the addition to tax under section 6654(a) for 2001.

C.  <u>Installment Agreement</u>

Petitioner contends that respondent abused his discretion by mismanaging his "collection due process".  Respondent, on the other hand, contends that there was no abuse of discretion because petitioner failed to provide the necessary information for an installment agreement, such as a monthly payment amount and pertinent financial information.

We review this matter for abuse of discretion.  See <u>Orum v. Commissioner</u>, 123 T.C. 1, 12-13 (2004), affd. 412 F.3d 819 (7th Cir. 2005).  An abuse of discretion occurs when respondent takes action that is arbitrary or capricious, lacks sound basis in law, or is not justifiable in light of the facts and circumstances. <u>Mailman v. Commissioner</u>, 91 T.C. 1079, 1084 (1988).

As relevant herein, section 6159 authorizes the Commissioner to enter into an installment agreement with taxpayers to satisfy their tax liabilities if the Commissioner determines that such agreements will facilitate the collection of the liability.[7] Sections 301.6159-1, 301.6320-1, and 301.6330-1, Proced. & Admin. Regs., together with the Internal Revenue Manual (IRM), provide the procedures for determining whether an installment agreement will facilitate collection of the liability.  See, e.g., Orum v. Commissioner, supra at 13 (upholding Commissioner's determination because the taxpayers failed to timely provide requested information regarding their current financial condition in accordance with IRM guidelines); see also 2 Administration, Internal Revenue Manual (CCH), pt. 5.19.1.5.4.1, (July 1, 2002). For an installment agreement to be approved, a taxpayer must be in compliance with all filing requirements.  Internal Revenue Manual (CCH) pt. 5.14.1.4.1(5) (July 1, 2002); see Rodriguez v. Commissioner, T.C. Memo. 2003-153 (a determination that a taxpayer is not entitled to a collection alternative such as an offer-in-compromise does not constitute an abuse of discretion if the taxpayer was not currently in compliance with Federal tax laws).

---

[7]  Sec. 6159(c), an exception not herein presented, requires the Commissioner to enter into an installment agreement in certain circumstances (generally involving tax liabilities of less than $10,000).

Throughout the CDP hearing, petitioner clearly expressed an interest in a collection alternative such as an installment agreement. The Appeals officer testified that he first had to ensure that petitioner was in current compliance with petitioner's tax obligations before he could consider a collection alternative such as an offer-in-compromise or an installment agreement. He further required petitioner to submit Form 433-A in order to consider collection alternatives. Pursuant to the Appeals officer's directives, petitioner submitted a completed Form 433-A and became compliant with his tax obligations by October 15, 2004.

Thereafter, the Appeals officer determined that there was an income discrepancy of $175 between information reported on petitioner's 2003 return and Form 433-A. To clarify this discrepancy, the Appeals officer requested petitioner to submit additional financial information, such as business receipt and expense information, by November 4, 2004. At a time not disclosed in the record, petitioner submitted several documents, including bank and expense statements, business and rent invoices, and utility bills. The Appeals officer closed the case on November 16, 2004.

The Appeals officer determined that he could not consider an installment agreement largely on the basis that he did not have the required financial information to reconcile the $175 income

discrepancy between Form 433-A and petitioner's 2003 return.[8]

The record, however, does not reveal the basis for this finding.

At trial, the Appeals officer could not identify what specific

document he was seeking to reconcile the $175 discrepancy, but he

acknowledged that petitioner submitted several personal and

business financial documents.  The Appeals officer testified, in

relevant part, that he was

> trying to seek current business receipt information and
> current business expense information to determine the
> actual net income that he [petitioner] was receiving so
> that I could determine, you know, compare it with the
> expenses, actually verify the expenses and then verify
> the current income to determine if there could be an
> installment agreement and what that amount would be, if
> there could be.

We find the $175 income discrepancy to be de minimis in

amount.  Furthermore, we are not persuaded that the Appeals

officer may not have received the "financial information

requested" that was necessary to reconcile the $175 amount,

especially in light of the fact that at trial he was unable to

specify what document he was seeking.  At the very least, the

record demonstrates that, notwithstanding the de minimis amount,

petitioner had complied with the Appeals officer's directives

sufficient for the Appeals officer to make a financial analysis

---

[8]  We note, in contrast, that on July 29, 2004, the Appeals
officer indicated in his notes that Form 433-A showed that
petitioner had "very little ability to make installment
payments."

of petitioner's monthly income and expenses and ability to pay in considering an appropriate collection alternative.

We found petitioner to be a conscientious taxpayer trying to fulfill his Federal income tax obligations, and, in light of the facts and circumstances of this case, respondent's failure to fully consider an installment agreement or other collection alternative was not justifiable. Accordingly, we hold that it was an abuse of discretion to issue the notice of determination under these circumstances.

We shall remand this matter to the Appeals Office for the sole purpose of considering an installment agreement or other collection alternative. Petitioner may not further challenge respondent's determination not to abate interest or the imposition of the additions to tax under sections 6651(a)(2) and 6654(a) or raise any new or additional issues beyond offering a collection alternative.

## Conclusion

We have considered all of the other arguments made by the parties, and, to the extent that we have not specifically addressed them, we conclude that they are without merit.

Reviewed and adopted as the report of the Small Tax Case Division.

To give effect to the foregoing,

An appropriate order will be issued.